McGREGOR W. SCOTT
United States Attorney
VINCENTE A. TENNERELLI
Assistant United States Attorney
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone: (559) 497-4000
Facsimile: (559) 497-4099

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KENNETH SHANE PATTERSON,<br><br>Defendants. | CASE NO. 1:19-CR-230-DAD-BAM<br><br>GOVERNMENT'S REQUEST TO REOPEN DETENION HEARING UNDER 18 U.S.C. § 3142(F) BASED ON NEW INFORMATION AND BRIEF IN SUPPORT OF REVOCATION UNDER 18 U.S.C. § 1348 AND IN RESPONSE TO DEFENDANT'S BRIEF ADDRESSING POTENTIAL DETENTION ORDER AT INITIAL APPEARANCE<br><br>DATE: October 14, 2020<br>TIME: 2:00 p.m.<br>COURT: Hon. Stanley A. Boone |

The United States, by and through Assistant United States Attorney Vincente A. Tennerelli, hereby submits this combined request to reopen defendant Kenneth Shane Patterson's initial detention hearing based on new information and brief in support of revocation under 18 U.S.C. § 1348 and in response to defendant's Brief Addressing Potential Detention Order at Initial Appearance Regarding Alleged Violation of Pretrial Release, Dkt. 49.

## I.  INTRODUCTION

Defendant Kenneth Shane Patterson is before the Court for the second time for a second serious pretrial release violation. Although the government is still awaiting bodycam footage from Patterson's September 19, 2020 hit-and-run incident in Pismo Beach, the evidence available demonstrates that Patterson violated California's misdemeanor hit-and-run statute. Perhaps more importantly, Patterson

GOV'T RESP. MOT. TO REOPEN DET. HR'G & MEM. IN
SUPP. OF REVOCATION & RESP. TO DEF.'S BR.

1

provided false information to the Pismo Beach Police Department and, later, to Pretrial Services.

Defendant's conduct since his November 1, 2019 detention hearing shows a pattern of noncompliance and lack of candor. Based on this new information—namely the totality of Patterson's conduct since release—the government moves to reopen the detention hearing and detain Patterson while the detention hearing is pending.

Additionally, given Patterson's conduct underlying Pretrial Services' September 28, 2020 Pretrial Release Violation Petition, Dkt. 44, revoking Patterson's pretrial release is warranted. Patterson's arguments opposing revocation, focused on his financial obligations and health, do nothing to undercut the clear evidence that Patterson is a flight risk, poses a danger to the community, and is unlikely to comply with any combination of release conditions.

## II.    FACTS

### A.    Patterson is indicted and released on conditions.

Patterson was indicted in October, 2019 on six counts of wire fraud, one count of bank fraud, and one count of evading the payment of income tax. Dkt. 1. At his initial appearance on November 1, 2019, the Court released Patterson on conditions. Dkt. 4. These conditions included the standard requirement that Patterson not violate any federal, state, or local law while on release (Condition 1) and that he not travel outside the Eastern District of California (Condition 7(c)). Dkt. 6. Additionally, given the allegations in the Indictment, the government requested, and Court imposed, the condition that Patterson not engage in any business providing access to private financial or tax information (Condition 7(l)). *Id*.

A few days after Patterson's initial appearance, he requested that the government agree to loosen Conditions 7(l) and 7(c). *See* Dkt. 9. The government and Patterson negotiated an amended Condition 7(l) allowing Patterson to continue his work in the small-business-loan industry, so long as he did not access his customers' private financial information and instead have such information routed to his associate, Matthew Peterson. *Id*. The parties also amended Condition 7(c) to allow Patterson to travel throughout California. *Id*. The Court approved the amended conditions on November 8, 2019. Dkt. 10.

### B.    Patterson submits a late travel request and receives a warning from the Court.

On February 24, 2020, Patterson moved to modify Condition 7(c) so he could travel to Mexico for a medical procedure. Dkt. 16. Patterson had booked the travel before consulting with Pretrial

GOV'T RESP. MOT. TO REOPEN DET. HR'G & MEM. IN
SUPP. OF REVOCATION & RESP. TO DEF.'S BR.

2

Services. Dkt. 54 at 2:12-15 (statement by Def.'s prior counsel at Feb. 26 Hr'g). The Court held a hearing on the request two days later. Dkt. 18. The government had just completed its investigation of Patterson's violation of Condition 7(l), *see* § II.C, *infra*, and therefore opposed the travel request and described the violation. Dkt. 54 at 5:13-8:15. In denying the travel request, the Court (Grosjean, M.J.) noted that the conduct the Government described seemed to be a "serious violation." *Id*. at 13:12. The Court further noted that Patterson had "booked an international trip without talking to Pretrial Services" and that the Court did not "think [Patterson was] taking it seriously that [he is] supposed to be here." *Id*. at 14:2-3. The Court stated, "People get detained, and you're not taking it seriously." *Id*. at 14:7-8.

### C. Patterson violates Condition 7(l) when he obtains and reviews a customer's private financial information.

On March 2, 2020, the government moved to revoke Patterson's release on the basis that he had obtained a customer's private financial and tax information in violation of Condition 7(l). Dkt. 19. The customer and her accountant had emailed the customer's tax and financial information to Patterson because the customer was hoping to obtain a small business loan. Dkt. 19, Ex. C at 3-7. During a recorded call on February 26, 2020, Patterson the tax and financial information he had received with the customer, describing the contents of her 2017 and 2018 tax returns in detail. *Id.*, Ex. D at 10:33-10:43.

After the call, the government contacted Patterson's counsel to discuss the violation. Patterson informed the government by email that he had not actually received the customer's financial information and that he had "immediately" forwarded the customer's emails to Matthew Peterson. *See* Ex. 1 hereto (emails between government and Patterson's counsel). These statements were not accurate. The monitored call makes clear that Patterson did receive the information, *see* Dkt. 19, Ex. D at 10:33-43, and that he did not forward it to Peterson for 48 hours, *see id.*, Ex. C at 1-4. At a hearing on June 22, 2020, Patterson admitted to violating Condition 7(l). Dkt. 37. The Court (Boone, M.J.) ordered Patterson released and modified Condition 7(l) to its original, more restrictive version, which prohibits Patterson from engaging in any business that provides access to tax or personal financial information. *Id*.

### D. Patterson violates Condition 1 when he engages in a hit and run, in violation of California Penal Code 20002(a).

On September 28, 2020, Pretrial Services filed a pretrial release violation petition against Patterson arising from an incident during which Patterson crashed into two parked cars, fled the scene,

GOV'T RESP. MOT. TO REOPEN DET. HR'G & MEM. IN SUPP. OF REVOCATION & RESP. TO DEF.'S BR.

3

and told officers a false story. *See* Dkt. 44; Ex. 2 hereto (police report).

According to the police report of the incident, Pismo Beach police responded to calls of a traffic collision at around midnight on September 19, 2020. Ex. 2 at 9-10. Witnesses reported seeing two men running from the scene. *Id*. at 10. A car had crashed into two stationary cars, and one of the stricken vehicles had "severe damage." *Id*. The report indicates that Patterson called the police "1-1.5 hours after the collision," and officers met Patterson at a nearby residence. *Id*. at 11. Patterson "was intoxicated and first stated that he was not involved in the collision." *Id*. He told officers that his passenger and an unknown male named "Brantley" had taken his vehicle to get more alcohol from the store. *Id*.

Officers told Patterson his story "did not make sense" and that they "could not arrest him for DUI". *Id*. at 11. At that point, Patterson stated that he was the driver of the vehicle that struck the stationary vehicles, that he and his passenger were driving back from a bar, and that Patterson was speeding and lost control of his vehicle. *Id*. Patterson got out the vehicle to make sure no one was hurt, saw the damage, and "fled the scene because he did not want to get a DUI." *Id*.

The police also interviewed Patterson's passenger, whose shoulder was injured in the crash. *Id*. At first, he told a story similar to Patterson's, telling police that the passenger and a man (who the passenger at first called "Bradley" and then "Brantley") had wrecked while Patterson was back at the residence. *Id*. Officers told the passenger that Patterson had told officers the real story. *Id*. The passenger then "apologized and stated he did not want [Patterson] to get a DUI because he 'has too much to lose.'" *Id*. The Pismo Beach Police Department forwarded the case for prosecution under Section 20002(a)—misdemeanor hit and run. *Id*.

Patterson reported the incident to Pretrial Services on September 21, 2020. Patterson's account to Pretrial Services was not consistent with the police report. He told Pretrial Services that he had swerved to avoid an animal on the road and had "side-swiped" a parked car. He stated that he did not have his cell phone, so he returned to his house to call the police. Patterson stated that he was upset that he was cited for a hit and run because he "had no choice but to leave the scene to obtain his cell phone and to treat his injuries." He denied that he was drinking.

### III. ARGUMENT

Patterson was released on conditions less than a year ago, but during that short time, he has

GOV'T RESP. MOT. TO REOPEN DET. HR'G & MEM. IN
SUPP. OF REVOCATION & RESP. TO DEF.'S BR.

4

engaged in repeated pretrial release violations and has failed to be truthful to the government, Pretrial Services, and the Pismo Beach Police Department. These incidents warrant reopening the detention hearing and detaining Patterson.

### A. Patterson's detention hearing should be reopened, and Patterson should be detained while the hearing is pending.

18 U.S.C. § 3148 governs revocation of pretrial release "after a hearing." 18 U.S.C. § 3148(b). A full hearing on Patterson's pretrial release violation will not, however, occur at the October 14, 2020 initial appearance on the violation. *See* Dkt. 56 (setting initial appearance). Nonetheless, detaining Patterson under 18 U.S.C. § 3142(f) is appropriate because Patterson's conduct since release constitutes new information that justifies both reopening the detention hearing and ordering Patterson's detention while the hearing is pending.

Section 3142(f)(2) provides that a defendant "may be detained pending completion of the [detention] hearing" and that a defendant's initial detention hearing "may be reopened" if the Court "finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community."

Patterson's conduct since release demonstrates a pattern of failing to take supervised release seriously, committing serious violations of his release conditions, and providing false information to Pretrial Services, the government, and local law enforcement. Back in February, the Court warned Patterson that he was "not taking [pretrial release] seriously." Dkt. 54 at 14:7-8. Patterson clearly violated Condition 7(l) by obtaining and reviewing a customer's financial information. He then claimed that the information never came through and that he immediately forwarded it to his associate; neither statements were true. *See* Ex. 1; Dkt. 19, Ex. D at 10:33-43 and Ex. C at 1-4. Now, Patterson appears to have committed another serious pretrial release violation. He caused a major accident resulting in "severe damage" to a vehicle and then fled the scene. He then told a false story to police and, later, to Pretrial Services. *See generally* Ex. 2.

These violations and related conduct are material to whether Patterson is a flight risk and a danger to the community. That Patterson fled the scene of his accident and provided false information to

GOV'T RESP. MOT. TO REOPEN DET. HR'G & MEM. IN SUPP. OF REVOCATION & RESP. TO DEF.'S BR.

5

police makes clear that Patterson is unwilling to face the consequences for his actions, even if avoiding those consequences means fleeing on foot in the middle of the night. Moreover, Patterson's conduct that night was dangerous; he told officers he was speeding and feared that, if he remained at the scene, he would be cited for a DUI. Luckily, he did not strike any motorists or pedestrians, but he did cause "severe damage" to a stopped car. And earlier this year, Patterson violated Condition 7(l), a condition imposed to protect the public from Patterson misusing people's financial information. This pattern of conduct is new information arising after Patterson's initial appearance and is material to flight and danger. *See* 18 U.S.C. § 3142(f).

### B. Revocation of Patterson's pretrial release is warranted because there is probable cause that he committed a crime, and Patterson presents a risk of flight and danger and is unlikely to comply with release conditions.

1. *Revocation under Section 3148 is warranted upon **either** a finding based on flight/danger **or** a finding that Patterson is unlikely to abide by conditions.*

Once a court finds that there is probable cause that a defendant on release broke the law, the court need only find that revocation is justified on the basis of flight or danger *or* that the defendant is unlikely to abide by release conditions.

Under 18 U.S.C. § 3148, in a proceeding to revoke a defendant's pretrial release under 18 U.S.C. § 3148, a court "shall enter an order of revocation and detention if, after a hearing," the Court (1) finds that there is probable cause to believe that the defendant has committed a crime while on release and, (2) finds that either (A) "based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community" <u>*or*</u> (B) "the person is unlikely to abide by any condition or combination of conditions of release." 18 U.S.C. § 3148(b) (emphasis added).

As made clear by the disjunctive "or," once a court finds probable cause that the defendant committed a crime, it need only find *either* that revocation is appropriate based on flight/danger or that the defendant is unlikely to comply with release conditions. *See* 18 U.S.C. § 3148(b); *see also U.S. v. Manafort*, 897 F.3d 340, 345 (D.C. Cir. 2018) (noting, where defendant challenged district court's findings that revocation was warranted under both Section 3148(b)(2)(A) (flight/danger) and Section Section 3148(b)(2)(B) (defendant unlikely to follow conditions), "Either finding provides an

GOV'T RESP. MOT. TO REOPEN DET. HR'G & MEM. IN SUPP. OF REVOCATION & RESP. TO DEF.'S BR.

6

independent basis for detention, so upholding either finding is sufficient to uphold the District Court's detention order.").

Defendant argues that revocation may only be ordered if "risk of flight or danger is impacted." Dkt. 49 at 3. This argument, however, is contrary to the text of Section 3148(b)(2), which offers two routes for revoking pretrial release: a finding of flight or danger under Section 3148(b)(2)(A) or a finding that the defendant is unlikely to abide by conditions under Section 3148(b)(2)(B). The two cases defendant cites do not hold otherwise. Defendant cites a concurring opinion in *United States v. Howard*, 793 F.3d. 1113, 1113-14 (9th Cir. 2015), for the proposition that "Pretrial detention pursuant to § 3148 must be based on considerations of flight or danger to another person or the community." Dkt. 49 at 3. However, that concurrence, in addition to not being precedent, relates only to the circuit judge's view that the release condition at issue in that case was "inappropriate and unfair." 793 F.3d at 1114. The judge does not cite or discuss Section 3148.

The other case defendant cites, *United States v. Parker*, 65 F.Supp.3d 358, 363 (W.D.N.Y. 2014), is similarly unhelpful to defendant's argument. Defendant cites *Parker* for the proposition that a court may revoke pretrial release because a defendant is unlikely to comply with conditions only when "the risk of flight or danger is impacted." Dkt. 49 at 3. The holding in *Parker*, however, was that "a finding that the defendant is a flight risk or danger will presumably support a finding that the person is unlikely to abide by conditions of release, and vice versa," not that a court cannot revoke pretrial release once it determines that a defendant has committed a crime and is also unlikely to abide by conditions. *See* 65 F.Supp.3d at 363 (quoting *U.S. v. Gotti*, 794 F.2d 773, 777 (2d Cir. 1986)).

 2. *Patterson violated Condition 1 when he committed a hit and run in violation of Cal. Veh. Code 20002(a).*

There is probable cause that Patterson broke the law during his September 19, 2020 hit-and-run incident. *See* 18 U.S.C. § 1348(b)(1)(A); *see also* Dkt. 6 (pretrial release conditions). California Vehicle Code § 20002(a) and (c) provides that any person involved in an accident resulting in property damage, including damage to vehicles, must safely stop his vehicle and either locate and notify the vehicle's owner or call the police "without unnecessary delay" and leave written notice of the name and address of the vehicle's driver and owner and a statement of the circumstances of the accident.

Gov't Resp. Mot. to Reopen Det. Hr'g & Mem. in Supp. of Revocation & Resp. to Def.'s Br.

7

The Pismo Beach police report makes clear that Patterson struck two vehicles, causing one "severe damage" on the night of September 19. *See* Ex. 2 at 10. The report also makes clear that Patterson ran from the scene because he feared he would receive a DUI. *See id.* at 10-11. He also waited "1-1.5 hours after the collision" to call the police. *Id.* at 11. There is no indication that he located the owner or left the required notice at the scene, and he did not call the police "without unnecessary delay." There is, therefore, "probable cause to believe that [Patterson] has committed a Federal, State, or local crime while on release." *See* 18 U.S.C. § 3148(b)(1)(A).

        3.    *Patterson is unlikely to abide by any condition or combination of conditions of release.*

In addition to there being probable cause that Patterson broke the law, it is also clear that Patterson is "unlikely to abide by any condition or combination of conditions of release." *See* 18 U.S.C. § 3148(b)(2)(B). Accordingly, revocation is warranted.

Patterson's conduct while on release shows that he is not taking his pretrial release seriously, has repeatedly failed to be truthful, and is unlikely to abide by any condition or combination of conditions. This latest violation reflects a clear pattern of noncompliance by Mr. Patterson. Over seven months ago, the Court warned Patterson that he was "not taking [his release conditions] seriously." Dkt. 54 at 14:7-8. Patterson has twice violated those conditions. And his violations were not minor. His February 2020 violation of Condition 7(l) was intentional. He did not merely accidentally receive a customer's financials; he accessed them and reviewed them in detail. *See* Dkt. 19, Ex. D at 10:33-43. Moreover, Patterson broke the law during his hit-and-run incident and has repeatedly failed to be candid. If Patterson's pretrial release is not revoked, there is every reason to believe that his pattern of noncompliance and lack of truthfulness will continue.

        4.    *There is no condition or combination of conditions of release that will assure that Patterson will not flee or pose a danger to the safety of any other person or the community.*

Because Patterson is unlikely to abide by conditions of release, the Court need not find that Patterson is a flight risk or danger to the community to revoke pretrial release. *See* §III.B.1, *supra*. Yet Patterson's conduct since release has made clear that Patterson is both a flight risk and a danger to the public, and there is no combination of conditions that could address flight or danger because Patterson

GOV'T RESP. MOT. TO REOPEN DET. HR'G & MEM. IN SUPP. OF REVOCATION & RESP. TO DEF.'S BR.

8

refuses to follow release conditions. Defendant claims that Patterson is "not more likely to flee from the pending charges because he failed to immediately report a non-injury traffic accident and because he was less than candid during the initial stages of the police inquiry." Dkt. 49 at 3-4. First and foremost, the clearest evidence from the September 19 incident that Patterson is a flight risk is that, on that night, he fled. After smashing into a car and causing "severe damage," he got out of his car and ran away to avoid the police. But additionally, Patterson's failure to report his accident and false statements to the police do make clear that he is a flight risk. Those actions demonstrate his willingness to avoid facing consequences for his actions.

Patterson's conduct also demonstrates that he poses a danger to the public. Both of his violations put the public at risk. Condition 7(l) protects the public from Patterson misusing customers' information, and Patterson violated that condition. Moreover, the fact that Patterson's crash injured only his passenger is lucky; his conduct was dangerous and reckless and could very easily have resulted in injury to pedestrians or other motorists.

### C. Defendant's arguments against revocation are not relevant to whether Patterson's detention hearing should be reopened or whether Patterson's pretrial release should be revoked.

While defendant argues that he should not be detained because he helps support six dependents, makes periodic payments to a person to whom he owes money, and has multiple risk factors for COVID-19, *See* Dkt. 49 at 4-10, none of those points makes Patterson less of a flight risk or danger or makes Patterson more likely to abide by conditions of release. 18 U.S.C. § 3142(g) requires courts to consider factors such as a defendant's physical condition and financial condition, but only for the purpose of determining "whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community." Here, there is no reason to believe that Patterson is less likely to flee, poses less of a danger, or is likely to abide by release conditions because he has significant financial obligations and health issues.

Patterson argues that he is a "life-long Central California resident," has minimal criminal history, and has no history of failing to appear in court. Dkt. 49 at 4. He also argues that he "helps support six children" and pays "approximately $8,900/month" to Kelly Weaver, a woman to whom he owes money. *Id.* Ms. Weaver submitted a letter to the Court, which Patterson attached to his brief. Dkt. 49 at Ex. 2.

GOV'T RESP. MOT. TO REOPEN DET. HR'G & MEM. IN SUPP. OF REVOCATION & RESP. TO DEF.'S BR.

9

1  But none of this is new information. Patterson was in the same financial situation, with the same
2  obligations, when he committed his hit and run on September 19. Those conditions did not prevent
3  Patterson from violating his conditions, fleeing, and placing the public at risk.

4  Moreover, even if Patterson's financial situation were relevant, the financial impact of detention
5  on Patterson's dependents and Ms. Weaver is not clear. When recently interviewed, Patterson told
6  Pretrial Services that he is currently unemployed. When agents spoke with Weaver on October 7, 2020,
7  she told them that Patterson's payments to her are "inconsistent" and that he "goes several months at a
8  time without paying her anything." Ex. 3 (Mem. of Interview of K. Weaver). His last payment to her
9  was in July, and, before that, he hadn't paid her in "three or four months." *Id*. Weaver appears to have
10 written her letter to the Court because Patterson called her, explained that he was involved in a hit and
11 run, and told her that she "won't get a dime" if he is detained. *Id*. Ms. Weaver does appear to depend on
12 Patterson's periodic payments to her, but, with Patterson unemployed, it's not clear how he will pay her
13 whether or not he is detained. And more importantly, Patterson's financial relationship with Ms.
14 Weaver does not make Patterson less of a flight risk or danger or make it more likely he will follow
15 release conditions.

16 Patterson also argues that he has various health conditions that require special care and make him
17 uniquely susceptible to COVID-19. Dkt. 49 at 5-10. As with Patterson's financial obligations, however,
18 Patterson's health conditions, as well as the COVID-19 pandemic, are not new. These conditions were in
19 place on September 19, when Patterson committed his hit and run. Moreover, Patterson's health issues
20 do not make him less of a flight risk or a danger, nor do they make him more likely to comply with
21 pretrial release conditions. Mr. Patterson's doctor lists several health conditions from which Mr.
22 Patterson currently suffers. *See* Ex. 6. Patterson contends that "[a] jail cannot provide a healthy
23 environment for a person with these conditions," but he does not provide any evidence for this assertion.
24 The government also notes Patterson's doctor's conclusion that Patterson "was not drinking" during the
25 hit-and-run incident and "would not have been able to start and drive a car due to his Gastric Sleeve
26 surgery." Yet Patterson admitted that he fled to avoid a DUI and was the person driving the vehicle. If
27 the doctor's conclusions are based on Patterson's statements to the doctor, Patterson apparently provided
28 his doctor with information that was not true.

Additionally, even if the risk of Patterson contracting COVID-19 were relevant to flight, danger, or the likelihood that Patterson will follow conditions, Patterson's argument ignores the current COVID-19 situation at Fresno County Jail. Out of over 2,000 inmates, there are now approximately five known COVID-infected inmates at the jail. Moreover, the jail continues to follow extensive COVID-19 mitigation protocols. *See* Ex. 4.

### IV. CONCLUSION

Given Patterson's repeated pretrial release violations and lack of candor, reopening Patterson's detention hearing and revoking Patterson's pretrial release is warranted.

Dated: October 9, 2020

McGREGOR W. SCOTT
United States Attorney

By: /s/ VINCENTE A. TENNERELLI
VINCENTE A. TENNERELLI
Assistant United States Attorney