# UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

No. 18-3037

---

UNITED STATES OF AMERICA,                                    Appellee,

v.

PAUL J. MANAFORT, JR.,                                    Appellant.

## APPELLEE'S MEMORANDUM OF LAW AND FACT

The United States of America, by and through Special Counsel Robert S. Mueller, III, submits that this Court should affirm the district court's June 15, 2018, detention order. Dkt. 328.[1]

On June 4, 2018, the government moved the district court to revoke Manafort's pretrial release. Dkt. 315. Days later, a grand jury charged him in a superseding indictment with attempting and conspiring to corruptly persuade two people with intent to influence their testimony in an official proceeding, in violation of 18 U.S.C. §§ 1512(b)(1) and (k), in addition to the already pending charges. Dkt. 318 ¶¶ 48-51. On June 15, 2018, after a hearing, the district court (Hon. Amy Berman Jackson) granted the government's motion and entered an

---

[1] Unless otherwise indicated, references are to the docket entries ("Dkt.") in *United States v. Manafort*, No. 17-cr-201-1 (ABJ) (D.D.C.), and the transcript of the June 15, 2018, detention hearing ("Tr.").

order detaining Manafort pending trial.  Dkt. 328.  On June 25, 2018, Manafort filed a notice of appeal.  Dkt. 335.

This Court should affirm.  In light of the superseding indictment, the district court correctly found probable cause to believe that Manafort committed a felony while on release.  18 U.S.C. § 3148(b)(1)(A).  The court then properly determined, based on the entire record, that he posed a danger to the community and that he would be unlikely to abide by any new condition or combination of conditions of release.  *Id.* § (b)(2)(A) & (B).  The court explained its reasoning in a 19-page order.  Manafort has shown no legal error.  And the district court's findings are not clearly erroneous.[2]

## STATEMENT

### A.  Manafort Attempted To Obstruct Justice While On Pretrial Release

On October 27, 2017, Manafort was indicted by a grand jury in this district

---

[2] Manafort suggests (Mem. 1, 22) that his placement at the Northern Neck Regional Jail has prevented him from preparing for his upcoming trials.  As the government has explained in recent filings, his assertions about the conditions of his detention are wrong.  *See* Dkt. 351-5 at 3-4.  They are also irrelevant.  On July 10, 2018, Judge Ellis transferred Manafort to the Alexandria Detention Center "[t]o ensure that defendant has access to his counsel and can adequately prepare his defense."  Dkt. 113, *United States v. Manafort*, No. 1:18-cr-083 (E.D. Va.).  Judge Ellis then denied Manafort's subsequent motion opposing his transfer and ordered "that to the extent practically possible, defendant should be permitted to meet and confer with his attorneys at least eight (8) hours per day during the next two (2) weeks leading up to trial."  Dkt. 120 at 3.

for conspiracy to defraud and commit offenses against the United States, conspiracy to launder money, failure to file reports of foreign bank accounts, making false and misleading statements, and acting in the United States as an unregistered agent of a foreign principal, in violation of the Foreign Agents Registration Act.  Dkt. 13.

On October 30, 2017, the district court released Manafort into the Pretrial Service Agency's high-intensity supervision program, subject to home detention and a $10 million unsecured personal-recognizance bond.  Dkt. 9; 10/30/17 Tr. 19.  The release order directed Manafort "not to commit any criminal offense nor violate any condition of this release order -- a rearrest for any offense based upon probable cause may be grounds for revoking your release."  Dkt. 9 at 2 (capitalization omitted).

On November 8, 2017, the district court, with the parties' consent, ordered the parties "to refrain from making statements to the media or in public settings that pose a substantial likelihood of material prejudice to this case."  Dkt. 38 at 2.  On December 5, 2017, the court issued an order for Manafort to show cause why he had not violated the court's media-communication order based on an op-ed about himself that Manafort had edited for an English-language paper in Ukraine.  At a status hearing on December 11, 2017, Judge Jackson discharged the order to show cause but admonished Manafort that the court was

"likely to view similar conduct in the future to be an effort to circumvent and evade the requirements of [its] order as they have been clarified this morning." Dkt. 112 at 12.

On February 23, 2018, a grand jury returned a superseding indictment that included new allegations concerning a part of Manafort's illegal U.S. lobbying scheme. The new allegations involved the secret retention of a group of former senior European politicians—informally referred to by Manafort and his conspirators as the "Hapsburg group"—who advocated positions favorable to Ukraine. Hapsburg group members held themselves out as independent third parties but were in fact paid lobbyists for Ukraine. Dkt. 202 ¶¶ 30-31. The group's work was managed by Manafort and principals of a public-relations company: Person D1 and his close colleague, Person D2. Dkt. 315 at 4. That work included lobbying efforts in the U.S. For example, Hapsburg group members met directly with various U.S. politicians in Washington, D.C., and submitted op-eds to U.S. publications. Dkt. 322 at 4. After one set of meetings between a Hapsburg group member and U.S. politicians, Manafort met with Person D2 in Washington to discuss how the member's meetings that day had gone. *Id.* Manafort then wrote a report to Ukraine's president boasting of the success of the group's efforts in the U.S. *Id.* at 5-6; Dkt. 322-2 (memo); Dkt. 328

4

at 10.[3]

The day after the superseding indictment was returned, Manafort called Person D1, asked him if he had seen any articles about Hapsburg, and said that he needed to give Person D1 a heads-up about Hapsburg. Tr. 25. Person D1—who had not been in regular contact with Manafort—hung up on him. *Id.* When his subsequent calls went unanswered, Manafort contacted Person D1 via an encrypted messaging application. Dkt. 328 at 6 ("This is paul."). Manafort then sent Person D1 a link to an article reporting on the new indictment's allegations, including that the Hapsburg group was lobbying in the U.S. *Id.* Manafort immediately followed with another encrypted message stating: "We should talk. I have made clear that they worked in Europe." *Id.* Person D1 saved screenshots of these communications, which he understood as an effort by Manafort to "suborn perjury." *Id.* at 19.

Two days after Manafort's messages to Person D1, Konstantin Kilimnik—a longtime associate of Manafort's who had worked with him and Persons D1 and D2—contacted Person D2 on two encrypted messaging

---

[3] A fuller account of the Hapsburg group's U.S. lobbying appears in the government's bail revocation pleadings (Dkt. 315 and 322) and attachments, including a declaration by a Federal Bureau of Investigation (FBI) Special Agent and a comprehensive chart of pertinent communications (Ex. N to Dkt. 315). The district court incorporated Exhibit N into the factual findings in its detention order. *See* Dkt. 328 at 5-8.

platforms. He wrote: "My friend P is trying to reach [Person D1] to brief him on what's going on." Dkt. 328 at 6. Two minutes later, Kilimnik added: "Basically P wants to give him a quick summary that he says to everybody (which is true) that our friends never lobbied in the US, and the purpose of the program was EU." *Id.* at 7. Approximately four hours later, Kilimnik switched to another encrypted application and sent a similar series of messages to Person D2, including a message relaying Manafort's claim that the Hapsburg group never lobbied in the United States and that Manafort was Person D1's "friend." *Id.* As did D1, Person D2 saved screenshots of these communications. Dkt. 315-2 at 5 n.1.

On February 22, 2018, a separate superseding indictment against Manafort was returned in the Eastern District of Virginia. Dkt. 9, *United States v. Manafort*, No. 1:18-cr-083 (E.D. Va.). That indictment included new bank-fraud allegations. Its tax allegations overlap with the D.C. indictment: both indictments make allegations relating to tax returns and the failure to report foreign bank accounts, including those connected to payments for Manafort's unregistered U.S. lobbying work that were funneled through Manafort's offshore accounts.[4] *Compare id.* ¶¶ 2-5, 14-17, 19-24, 46, 50, *with* Dkt. 202 ¶¶ 2-

---

[4] The government proposed a single trial on all charges in D.C., but Manafort declined to waive venue. *See* 2/14/18 Tr. 16 (Dkt. 280).

3, 5, 14-17, 32-38. On March 9, 2018, the Virginia district court entered a pretrial release order providing in part that Manafort "must avoid all contact, directly or indirectly, with any person who is a victim or witness in the investigation or prosecution of the defendant." Dkt. 328 at 18 (quoting Virginia order).

Manafort, however, continued to pursue Persons D1 and D2. On April 4, Kilimnik repeatedly contacted Person D2 on two encrypted messaging applications. He wrote: "My friend P has asked me again to help connect him with [Person D1]. Can you help? . . . I tried him [Person D1] on all numbers." Dkt. 328 at 8. Kilimnik also tried Person D1 directly, writing: "My friend P is looking for ways to connect to you to pass you several messages. Can we arrange that." *Id.* Persons D1 and D2 avoided responding to any entreaty.

**B.    The Bail Revocation Proceedings**

On May 10, 2018, Manafort filed a motion to revise his conditions of release. Dkt. 291. The government did not oppose the financial package or surety that Manafort proposed. Dkt. 304. But the government informed the district court in an *ex parte* filing—which has since been unsealed—that it had recently obtained evidence that Manafort had attempted to tamper with witnesses. Dkt. 308, 325. The government thus sought ten days to investigate further and provide its position on Manafort's latest bail proposal. That application was granted. May 31, 2018 Minute Order.

7

On June 4, 2018, the government filed a motion pursuant to 18 U.S.C. § 3148 to revoke or revise Manafort's pretrial release. Dkt. 315. The government submitted that the accompanying declaration of a FBI Special Agent and exhibits established probable cause to believe that Manafort had violated 18 U.S.C. § 1512(b)(1) by attempting to tamper with witnesses while on pretrial release. Committing a felony on release triggers a statutory presumption that no condition or combination of release conditions would assure the safety of the community and of others. Dkt. 315 at 1 (citing, *inter alia*, 18 U.S.C. § 3148(a)-(c)).

On June 8, 2018, the grand jury returned a superseding indictment charging Manafort and Kilimnik with attempted witness tampering and conspiracy to commit witness tampering. Dkt. 318 ¶¶ 48-51. In a response to the government's motion, Manafort did not acknowledge that he had been indicted for the conduct that formed the basis of the government's motion; did not address the presumption in favor of detention triggered by the grand jury's probable-cause finding, *see* 18 U.S.C. § 3148(b); and did not propose additional conditions of release for the court's consideration. Instead, Manafort asked the court to accept his previously proposed bail package and release him from home detention. Dkt. 319 at 8.

One week later, on June 15, 2018, the court held a hearing on the government's motion. The court set out the history of the bail proceedings, Tr. 5-8, and summarized the evidence submitted on the witness-tampering allegations, Tr. 10-18. Judge Jackson explained that, in light of the grand jury's finding of probable cause, she would not make an independent determination of probable cause that Manafort committed those offenses. Tr. 17, 23. The district court asked the parties to focus on the additional issues relevant under Section 3148(b)(2): whether there were conditions of release that would assure Manafort's presence at trial and prevent him from posing a danger to the community and, if so, whether he was likely to abide by such conditions. Tr. 23-24. After hearing argument, the court detailed Manafort's contacts with potential witnesses, found that Manafort would not abide by any conditions or combinations of conditions if released, and ordered Manafort detained pending trial. Tr. 50-51. The court specifically noted "the number of contacts, the persistence of the contacts and their obvious intent and import," which was evident from "how they were perceived and received by the person to whom they were made." Tr. 50. That evidence, coupled with Manafort's actions under other court orders, led the court to conclude that Manafort could not "be trusted to comply with the Court's directives." Tr. 51. The court denied Manafort's oral motion for a stay of detention pending appeal. Tr. 51-52.

Later that day, the court issued a written order supplementing its oral decision and setting forth findings. Dkt. 328. The court detailed the timing and nature of the witness contacts. *Id.* at 5-8. It explained that the grand jury's finding of probable cause that Manafort committed witness tampering (and thus violated his conditions of release) triggered a "rebuttable presumption that no condition or combination of conditions will assure that the defendant will not pose a danger to the safety of any other person or the community." *Id.* at 11. But the court concluded that Manafort had made a sufficient showing to rebut the presumption "given the relatively low threshold" required to do so. It stressed that Manafort's showing "was not a very substantial" one because "it was largely directed towards the question of whether [Manafort] committed the charged offense, and not whether he posed a danger to the community or he could be trusted to abide by the Court's orders." *Id.* at 15. The court also concluded that the presumption remained as an evidentiary factor weighing against release. *Id.* at 14-15 (citing, *inter alia*, *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010) ("Even when a defendant satisfies his burden of production, however, 'the presumption favoring detention does not disappear entirely but remains a factor to be considered among those weighed by the district court.'") (quoting *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001))). Acknowledging that Manafort's tampering activities did not pose a threat of

physical harm to any person, the court explained that Manafort's conduct caused "harm to the administration of justice" and "to the integrity of the courts," both of which are "dangers . . . entitled to the full protection of the Bail Reform Act." *Id.* at 17.

Turning to potential conditions of release, the court found that it would be "impractical and ineffective to demand the surrender of [Manafort's] cell phone or to disconnect his internet service." Dkt. 328 at 17. Such an order "would be impossible [for the Pretrial Services Agency] to enforce," as Manafort "lives with another person" and "is permitted to have visitors" who might have their own internet devices. *Id.* The court observed that the only condition of release that Manafort proposed was for the court to issue an "unambiguous" order barring him from contact with witnesses. *Id.* at 18. But the court was "troubled" that some of Manafort's attempts to contact Persons D1 and D2 (the latter through Kilimnik) occurred even after the Virginia district court had issued a "clear and unambiguous" no-contact order; Judge Jackson also doubted the efficacy of such an order given Manafort's insistence that it be accompanied by an explicit list of government witnesses. *Id.* at 18; *see also* Tr. 49.

After considering "the nature of" the witness-tampering allegations and the evidence "in support of" those allegations, including "the number of contacts and attempted contacts, the persistence of the efforts to make contact, the

inferences that can be drawn from what was said, and the clear impact the contacts had on the recipient, who reported them to the prosecution," the court found "that there are no conditions that would assure that the defendant will comply" with the basic requirement of the Bail Reform Act that he not commit any additional crimes while on release. Dkt. 328 at 19. Even if such conditions existed, the court stated, it could not find that "Manafort would abide by" them. *Id.* To the contrary, the court was left "with the unshakeable impression that he cannot be trusted to comply in the future." *Id.*

## ARGUMENT

Manafort argues that the district court: (1) "did not assess the weight of the evidence against" him; and (2) clearly erred in finding that he "was unlikely to abide by any conditions of release" because it erroneously believed that he had "violated a release order" in his Virginia case and had violated the "gag order" imposed in this case. Mem. 1-2. Those arguments lack merit.

### A.    Standard Of Review And Applicable Legal Principles

The Bail Reform Act of 1984, 18 U.S.C. § 3148, permits the revocation of pretrial release and an order of detention for a person who has violated a condition of that release. Section 3148(b) provides that a court:

> shall enter an order of revocation and detention if, after a hearing, the judicial officer—
>
> (1) finds that there is—

12

> (A) probable cause to believe that the person has committed
> a Federal, State, or local crime while on release; or
>
> (B) clear and convincing evidence that the person has violated
> any other condition of release; and
>
> (2) finds that—
>
> (A) based on the factors set forth in [18 U.S.C. § 3142(g)],
> there is no condition or combination of conditions of release
> that will assure that the person will not flee or pose a danger
> to the safety of any other person or the community; or
>
> (B) the person is unlikely to abide by any condition or
> combination of conditions of release.

18 U.S.C. § 3148(b).

Once a court finds probable cause to believe that the defendant committed a felony while on release, "a rebuttable presumption arises that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community." 18 U.S.C. § 3148(b).

In reviewing an order of detention, this Court will accept the district court's factual findings unless they are clearly erroneous. *See United States v. Smith*, 79 F.3d 1208, 1209, 1211 (D.C. Cir. 1996). This standard applies "even when the district court's findings do not rest on credibility determinations, but are based instead on physical or documentary evidence or inferences from other facts." *Barhoumi v. Obama*, 609 F.3d 416, 423-24 (D.C. Cir. 2010). Contrary to Manafort's suggestion (Mem. 9), the district court has considerable discretion in

13

making detention determinations.  *United States v. Xulam*, 84 F.3d 441, 444 (D.C. Cir. 1996).

## B.    The District Court Properly Assessed The Weight Of The Evidence

Manafort claims (Mem. 1, 10-14) that the district court committed error by failing to consider the weight of the evidence against him in determining whether any condition or combination of conditions could assure the safety of the community, *see* 18 U.S.C. 3148(b)(2)(A), and that this error was significant because the evidence against him "was weak."  Manafort is incorrect on both counts.[5]

1.    The district court expressly considered the weight of evidence in making its detention decision under Section 3148(b).  Specifically, the court found that no condition of release would prevent Manafort from committing additional crimes against the community in light of:

> the evidence supplied in support of the government's motion, including the number of contacts and attempted contacts [with Persons D1 and D2], the persistence of the efforts to make contact, the inferences that can be drawn from what was said, and the clear

---

[5]  In any event, any such deficiency would at most warrant a remand for additional findings, not release.  *See United States v. Nwokoro*, 651 F.3d 108, 111-112 (D.C. Cir. 2011) (remanding case for "findings of fact and a statement of reasons," where district court failed to make sufficient findings under 18 U.S.C. § 3142(g)).

> impact the statements had on [one] recipient, who reported them to
> the prosecution as an attempt to suborn perjury.

Dkt. 328 at 19; *see also id.* at 5-10 (reviewing the evidence submitted by the parties). That statement reflects the court's assessment of the witness-tampering evidence under 18 U.S.C. § 3148(b)(2)(A) (which incorporates Section 3142(g)).

In claiming otherwise, Manafort incorrectly relies on the district court's earlier statement that "[i]n light of the superseding indictment," it need not make an "independent assessment of the weight of the evidence." Dkt. 328 at 11; *see* Tr. 17. But that statement pertained to the statutory probable-cause finding under 18 U.S.C. § 3148(b)(1)(A)—*i.e.,* the trigger for the rebuttable presumption—not to the weight finding under 18 U.S.C. § 3148(b)(2)(A). *See* Tr. 17 ("I don't need to weigh the evidence myself to state now, for purposes of § 3148 . . . , that there has been a finding of probable cause to believe that this defendant committed a felony offense while he was on pretrial release"). The court's reliance on the indictment for the probable-cause finding was correct as a matter of law. *See Kaley v. United States*, 134 S. Ct. 1090, 1097 (2014) (grand-jury indictment "'conclusively determines the existence of probable cause' to believe the defendant perpetrated the offense alleged"). And the court's decision at the hearing to refrain from providing a detailed assessment of the evidence in open court reflected the likelihood of press coverage and the need to preserve potential jurors' ability to assess the case based on the record, not on reporting

Case 1:19-cr-00230-DAD-BAM    Document 73-1    Filed 10/16/2018    Page 16 of 24

about the court's views.  Tr. 18.  Manafort did not object to that statement or request further findings under Section 3148.

2.  In arguing (Mem. 15) that the evidence of witness tampering is "weak," Manafort asserts that he could not have had intended to influence the testimony of Persons D1 and D2 because he did not know them to be potential witnesses, and he had only limited contact with them.  As the district court concluded, "[g]iven the timing and the nature of" Manafort's efforts to contact Persons D1 and D2, "this suggestion strains credulity."  Dkt. 328 at 9 n.6.

That conclusion was not clearly erroneous.  Manafort reached out to those individuals, directly and through a conspirator, immediately after return of the superseding indictment, after months without any contact with them, and through repeated encrypted messages.  Dkt. 315 at 13-14.  Manafort and Kilimnik sent multiple messages to Persons D1 and D2 to promote a false cover story that would counter the new allegations in the superseding indictment— that the Habsburg group lobbied in the U.S.—by asserting that the Hapsburg group had only lobbied in Europe.  Dkt. 328 at 5-8 (listing contacts); *see id.* at 8 (Kilimnik messages Person D1 that he had "tried [Person D1] on all numbers").  Such conduct represents a core form of corrupt persuasion covered by 18 U.S.C. § 1512(b)(1).  *See United States v. Baldridge*, 559 F.3d 1126, 1142 (10th Cir.) (Section 1512(b)(1) reaches "noncoercive attempt[s] to persuade a witness to lie

16

to investigators"), *cert. denied*, 556 U.S. 1226 (2009). The district court was entitled to draw reasonable inferences from the timing, number, and substance of the contacts—and the "clear impact" the contacts had "on the recipient," Dkt. 328 at 19—to conclude that Manafort intended to tamper with witnesses. *See Barhoumi*, 609 F.3d at 423-24.

Manafort additionally argues (Mem. 17) that providing such a false cover story could not constitute witness tampering because neither he nor Kilimnik asked the witnesses "to do anything." But "corrupt persuasion includes situations where a defendant coaches or reminds witnesses by planting misleading facts." *United States v. Edlind*, 887 F.3d 166, 174 (4th Cir. 2018); *accord, e.g.*, *United States v. LaShay*, 417 F.3d 715, 718 (7th Cir. 2005) (corrupt persuasion includes placing a false story before a witness "in the hopes that he would adopt it if interviewed"), *cited with approval in United States v. Gurr*, 471 F.3d 144, 154 (D.C. Cir. 2006). That is exactly what happened here.

In a decision cited by the district court (Dkt. 328 at 12) as the "precedent that is the most similar," the Second Circuit explained that witness tampering constitutes "obstruction of justice" and had been "a traditional ground for pretrial detention by the courts" even before Congress allowed "detention for dangerousness" in "the Bail Reform Act of 1984." *United States v. LaFontaine*, 210 F.3d 125, 134 (2d Cir. 2000) (finding non-threatening witness tampering

was sufficiently dangerous to the community to support an order of revocation of pretrial release); *see also* Dkt. 328 at 12 (citing additional cases).  Here, the district court found that Manafort posed just such a danger.  Dkt. 328 at 17, 19.  This factual finding is not clearly erroneous; it is based on Manafort's own conduct in seeking to obstruct justice while on home detention.[6]

3.  Even assuming that the court's consideration of the weight of the evidence were deficient, it would not help Manafort.  The court also found that Manafort could not be trusted to abide by any conditions of release.  Dkt. 328 at 19 (even if Manafort had provided additional conditions, the court "could not find . . . that [he] would abide by those conditions").  That is an independent basis for finding that a defendant shall be detained, *see* 18 U.S.C. § 3148(b)(2)(B), and it does not require consideration of the 18 U.S.C. § 3142(g) factors.  *See, e.g., United States v. Okechuku*, 615 Fed. App'x 190, 191 (5th Cir. 2015) (unpublished) ("given the finding that Okechuku was unlikely to abide by any condition or

---

[6] Manafort suggests (Mem. 16 n.8) that he did not have an opportunity to counter an oral proffer about the contents of his initial phone call with Person D1 (*see* Dkt. 328 at 5 & n.5; Tr. 24-25).  Manafort had over a week after the government's motion, which noted the call, to prepare evidence about it.  But he never did so or sought more time to respond to the proffer.  And he does not offer any response to the proffer now.  Nor would it address the many other communications that formed the core of the court's recitation of the facts and underlying charges, which also went factually unchallenged.  *See* Dkt. 328 at 6-8 (tabular description).

combination of conditions for release, *see* § 3148(b)(2)(B), it was not necessary for the district court to reevaluate the § 3142(g) factors for release").

### C. The District Court Did Not Clearly Err In Finding That Manafort Would Not Likely Abide By Any Conditions Of Release

Manafort contends (Mem. 18-20) that the court erred in finding that he would likely not abide by any conditions of release. *See* 18 U.S.C. § 3148(b)(2)(B). Specifically, Manafort argues (Mem. 18) that the court's finding was based solely upon the rebuttable presumption, without any consideration of the record evidence. On the contrary, as explained in Part B, *supra*, the district court considered the clear evidence of witness tampering, as well as other record evidence of Manafort's ability to comply with court orders. Dkt. 328 at 5-10, 18-19 (discussing Manafort's conduct). The court's conclusion that Manafort could not be trusted thus was not predicated solely on the statutory presumption.

Manafort asserts (Mem. 19-20) that the district court operated under the mistaken impression that his outreach to Persons D1 and D2 violated the Virginia district court's no-contact order. The district court made clear that it did "not have the jurisdiction to sanction a violation of another [c]ourt's order." Dkt. 328 at 18. Rather, the court "consider[ed Manafort's] adherence to" the Virginia court's "admonitions" solely "in determining whether it can place its trust in" him. *Id.*; *see* 18 U.S.C. § 3148(b)(2)(B). Manafort identifies no

authority that would bar a judge's considering compliance with another court's order for that purpose.

Manafort's interpretation (Mem. 19) of the Virginia no-contact order is also wrong: his contacts with Persons D1 and D2 were encompassed by the order. The order required him to "avoid all contact, directly or indirectly, with any person who is a victim or witness in the investigation or prosecution of the defendant." Dkt. 328 at 18. Persons D1 and D2 are witnesses in the single "investigation" that, for venue reasons, also gave rise to two "prosecution[s]" in neighboring districts. *See id.*; Tr. 31; *see also* p. 6 & n.4 *supra*. And the relevance of the testimony of Persons D1 and D2 is not limited to the District of Columbia charges. Person D1 and D2 and the Hapsburg group were paid millions through Manafort-controlled offshore accounts; as a result, Persons D1 and D2 are also witnesses on the foreign-account and tax-related charges that are common to both prosecutions. *See* Dkt. 318 ¶¶ 2-3, 6, 13-17, 32-38; Dkt. 9 ¶¶ 2, 4-5, 7, 14-17, 19-25, 46, 50, *United States v. Manafort*, No. 1:18-cr-083 (E.D. Va.).

Manafort also errs in contending (Mem. 19-20) that he could not have violated the no-contact order because his "own" communications with Person D1 occurred during February 2018, before the March 9, 2018 no-contact order was entered. His conspirator, Kilimnik, tried to contact Persons D1 and D2 in April 2018, the month after the order was entered. Dkt. 328 at 18; *see id.* at 8

(chart listing the communications).  As the district court noted, those messages "specifically attribute" to Manafort "the re-initiation of the attempts to contact [Person] D1."  *Id.* at 18 ("My friend P asked me again to help connect him with [Person D1]."); *see also id.* at 6-7 (additional examples).  Manafort would, in any event, be responsible for the foreseeable acts of witness tampering that Kilimnik committed in furtherance of their ongoing obstruction conspiracy.  *See United States v. Ballestas*, 795 F.3d 138, 146 (D.C. Cir. 2015).  And Manafort's willingness to work through confederates to evade court orders amply warranted the court's skepticism about whether it could "place its trust" in him.  Dkt. 328 at 18; *see id.* ("The Court is very troubled by the evidence that the contacts allegedly made on the defendant's behalf by Kilimnik continued after the order was entered.").

Finally, contrary to Manafort's contention (Mem. 20), the district court did not suggest that he "had somehow violated its own November 2017 order" limiting public statements to the media.  *See* Dkt. 38 at 2 (order barring "the parties" and their counsel "from making statements to the media or in public settings that pose a substantial likelihood of material prejudice to this case").  The court well knew that it had issued, then discharged, a show-cause order. *See* Dkt. 328 at 2-3.  But the episode was relevant, as the court explained, because it reinforced the finding that Manafort "skat[ed] close to the line" (Tr. 50) by

construing court directives "as narrowly as possible," Dkt. 328 at 19, thus raising alarm bells about his ability, and willingness, to abide by any additional conditions of release that the court might impose.

## CONCLUSION

WHEREFORE, the government respectfully requests that the Court affirm the district court's order of detention pending trial.

Respectfully submitted,

ROBERT S. MUELLER, III
Special Counsel

/s/
Andrew Weissmann
Greg D. Andres
Scott A.C. Meisler
Special Counsel's Office
950 Pennsylvania Avenue NW
Washington, DC 20530
Telephone: (202) 616-0800

# CERTIFICATE OF SERVICE

I hereby certify that I have caused a copy of the foregoing Appellee's Memorandum of Law and Fact to be served through this Court's CM/ECF system on counsel for appellant Paul J. Manafort, Jr.

_____/s/_____
SCOTT A.C. MEISLER
Assistant Special Counsel

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), I hereby certify that this Memorandum of Law and Fact complies with D.C. Circuit Rule 9 and Federal Rule of Appellate Procedure 27(d)(2) because it has been prepared in a 14-point Calisto MT font and contains 5,077 words, excluding parts exempted by Federal Rule of Appellate Procedure 32(f).

/s/
SCOTT A.C. MEISLER
Assistant Special Counsel