# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:19-cr-00230-DAD-BAM-1 |
| Plaintiff, | ORDER RE PETITION FOR VIOLATION OF CONDITIONS OF PRETRIAL RELEASE AND MOTION TO MODIFY CONDITIONS OF RELEASE AND MOTION TO REVOKE ORDER OF RELEASE |
| v. | |
| KENNETH SHANE PATTERSON, | |
| Defendant. | (ECF Nos. 49, 59, 60, 66-68, 69, 70, 73) |

**I.**

**BACKGROUND**

On October 31, 2019, an indictment was filed charging Kenneth Shane Patterson ("Defendant") with six counts of fraud by wire, radio, or television in violation of 18 U.S.C. § 1343; one count of bank fraud in violation of 18 U.S.C. § 1344; one count of attempt to evade or defeat tax in violation of 26 U.S.C. § 7201; and seeking criminal forfeiture under 18 U.S.C. §§ 981(a)(l)(C), 982(a)(2)(A) and 28 U.S.C. § 2461(c). (ECF No. 1.)

Defendant made an initial appearance in custody on November 1, 2019 and pled not guilty. (ECF No. 4.) A detention hearing was held and Defendant was ordered released on his own recognizance into the custody of third party custodian, Emily Baxter. (Id.)

On September 28, 2020, a pretrial release violation petition was filed with an initial appearance on the petition set for October 2, 2020; and Defendant was to reside at the residence

1

1 of the third party custodian and not be absent more than twenty-four hours without prior 2 approval of the pretrial services officer and travel was restricted to the Eastern District of 3 California unless prior approval was obtained from pretrial services.  (ECF No. 6.)

4       On November 8, 2019, at the stipulation of the parties, the conditions of release were 5 modified and travel was restricted to the State of California unless otherwise approved in 6 advance by the pretrial services officer; and he was not to obtain any new employment where he 7 is engaged in or provided access to private financial or tax information.  (ECF No. 10.)

8       On January 13, 2020, the first status conference was held and Defendant was not present. 9 (ECF No. 13.)  Counsel stated that there was a miscommunication and a stipulation was to have 10 been filed to continue the hearing, Defendant's presence was waived for the hearing.  (Id.)

11       Defendant filed a motion to modify his conditions of release and a hearing was held on 12 February 26, 2020.  (ECF Nos. 15, 18.)  Defendant sought to be allowed to travel to Mexico for 13 surgery and be relieved from the requirement of drug testing.  (ECF No. 15.)  The motion was 14 denied.  (ECF No. 18.)

15       On March 2, 2020, the Government filed a motion to revoke the order of release 16 contending that Defendant had violated his conditions of release by obtaining and receiving a 17 client's tax and other financial information.  (ECF No. 19.)  The matter was continued several 18 times at the stipulation of the parties, and a hearing was held on June 22, 2020 before the 19 undersigned.  (ECF No. 37.)  At the hearing, Defendant admitted to having violated special 20 condition 7(l), which required him not to engage in any business providing access to private 21 financial or tax information.  (Id.)  Defendant was ordered to be released on the additional 22 condition that he was not to engage in any business that provides access to tax information or 23 personal financial information.  (Id.)

24       On September 28, 2020, a pretrial release violation petition was filed alleging that on 25 September 20, 2020, Defendant was cited by the Pismo Beach Police Department for violations 26 of California Vehicle Code section 20002(a), misdemeanor hit and run.  On October 5, 2020, 27 Defendant filed a brief addressing a possible detention order at the initial appearance regarding 28 the alleged violation of pretrial release.  (ECF No. 49.)  On October 10, 2020 the Government

1 filed a motion to modify conditions of release seeking to revoke Defendant's conditions of
2 release and have him remanded to custody. (ECF No. 59.)

3       On October 13, 2020, Defendant filed a medical report regarding treatment and both
4 parties filed a notice of request to seal documents. (ECF Nos. 60, 61, 62.) On October 14, 2020,
5 the requests to seal documents were granted in part, and the Government filed a supplemental
6 memorandum in support of the request revoke release and Defendant filed a redacted exhibit.
7 (ECF No. 63, 66-68.)  The unredacted and sealed documents relating to the motion to modify
8 conditions of release and revoke release were filed on October 15, 2020. (ECF Nos. 69, 70.)

9       Defendant made an initial appearance on the supervised release violation and entered a
10 denial on October 16, 2020, and Defendant was ordered to remain out of custody with the
11 following additional conditions: home detention. (ECF No. 74.) On this same date, Defendant
12 filed a supplemental brief. (ECF No. 73.) The Government filed a supplemental brief and a
13 notice of request to seal an exhibit on October 19, 2020. (ECF Nos. 75, 76.) The Government's
14 request to seal was granted. (ECF No. 78.)

15       A contested hearing on the pretrial release petition was held on October 21, 2020.
16 Counsel Vincente Tennereilli and Alex Dempsey appeared by video for the Government, and
17 counsel Kevin Rooney appeared by video with the Defendant. Pretrial Services Officer Jessica
18 McConville testified during the evidentiary hearing. The government's exhibits 1, 2, 3, 4, 5, 6,
19 7, 8, 9, 12, and 13 and Defendant's exhibits A, B, C, D, E, F, G, H, I, J, K, and L were admitted
20 into evidence.

21 **II.**
22 **FINDINGS OF FACT**

23    1.   On October 31, 2019, an indictment was filed charging Defendant with six counts
24 of fraud by wire, radio, or television in violation of 18 U.S.C. § 1343; one count of bank fraud in
25 violation of 18 U.S.C. § 1344; one count of attempt to evade or defeat tax in violation of 26
26 U.S.C. § 7201; and seeking criminal forfeiture under 18 U.S.C. §§ 981(a)(l)(C), 982(a)(2)(A)
27 and 28 U.S.C. § 2461(c). (ECF No. 1.)

28    2.   Defendant made an initial appearance on November 1, 2019, and entered a not

1  guilty plea. A detention hearing was held and Defendant was released on the following
2  conditions: (1) must not violate federal, state, or local law while on release; (2) cooperate in the
3  collection of a DNA sample; (3) advise the court or pretrial services in writing before making
4  any change of address or phone number; and (4) appear in court as required. (ECF Nos. 4, 6.)
5  The following additional conditions were imposed: (6) reside with third party custodian Emily
6  Baxter; and (7) (a) report on a regular basis to Pretrial Services and comply with their rules and
7  regulations; (b) report in person to the Pretrial Services Agency on the first working day
8  following release from custody; (c) reside at a location approved by the PSO, and not move or be
9  absent from this residence for more than 24 hrs. without prior approval of PSO with travel
10 restricted to Eastern District of California, unless otherwise approved in advance by PSO; (d)
11 cooperate in the collection of a DNA sample; (e) report any contact with law enforcement to his
12 PSO within 24 hours; (f) not possess, have in his residence, or have access to a
13 firearm/ammunition, destructive device, or other dangerous weapon; (g) submit to drug and/or
14 alcohol testing as approved by the PSO; (h) refrain from excessive use of alcohol, or any use of a
15 narcotic drug or other controlled substance without a prescription by a licensed medical
16 practitioner; (i) not apply for or obtain a passport or any other traveling documents during the
17 pendency of this case; (j) not solicit any person for investments; (k) not open any bank account,
18 in his name or the name of any business, without approval of Pretrial Services; (l) not engage in
19 any business providing access to private financial or tax information; (m) not open any bank
20 account, in his name or the name of any business, without approval of Pretrial Services; (o) not
21 make any fraudulent transfer of property; and (p) have no communication with Helen Quan,
22 Geoff Steinbach, Jay Steinbach, Abdulafed Ali, Josemar Mercado, and Marlene Robertson.
23 (ECF No. 6.)

24       3.   On November 8, 2019, Defendant's conditions of release were modified as
25 follows: (c) travel was restricted to the State of California; and (l) Defendant was not to obtain
26 any new employment where he was engaging in or provided access to private financial or tax
27 information and he was to refer all clients and customers to Matt Peterson without obtaining
28 those customers' financial or tax information. (ECF No. 10.)

1       4.      On January 24, 2020, Defendant made arrangements to have a surgery in Mexico
2 and purchased a one way ticket to fly to San Diego on March 3, 2020.  (Def. Exh. K.)

3       5.      On February 24, 2020, Defendant filed a motion to modify the conditions of his
4 pretrial release because he had scheduled a surgery in Mexico and had purchased an airline
5 ticket.  (ECF No. 15.)

6       6.      On February 26, 2020, Magistrate Judge Grosjean held a hearing and denied
7 Defendant's motion to modify conditions of release.  (ECF No. 18.)  Judge Grosjean found that
8 Defendant was not taking his conditions of release seriously.  (Transcript of Mot. to Modify
9 Release Conditions, 13:19-14:8, ECF No. 54.)

10       7.      On June 22, 2020, Defendant admitted to violating his conditions of release by
11 obtaining private financial information for a client.  (ECF No. 37.)  Defendant's conditions of
12 release were modified as follows: (7) Defendant "(a) may not engage in ANY business that
13 provides access to tax information or personal financial information[.]"  (Id. at 2.)

14       8.      On September 16, 2020, Kenneth Atkins, a friend of Defendant's, was killed in an
15 automobile accident.  (FOX 26 News Release, Deadly crash forces closure of Hwy. 41 in south
16 Fresno County, Def. Exh. A; September 16, 2020 Facebook post, Def. Exh. B.)

17       9.      On September 19, 2020, after drinking a couple beers, Defendant drove with his
18 friend to get some ice.  (Interview Body Cam, 16:00-16:10, Gov. Exh. 7.)

19       10.      At approximately 11:58 p.m., Defendant was driving and lost control of his
20 vehicle colliding with a parked vehicle causing severe damage to the vehicle he was driving,
21 severe damage to the front and rear end of the parked vehicle, and minor damage to the rear
22 bumper of a second parked vehicle.  (Traffic Collision Report Narrative, Gov. Exh. 1.)  The
23 passenger injured his right shoulder in the crash.  (Interview Body Cam, 6:59-7:45.)

24       11.      Defendant and the passenger in the vehicle ran from the scene leaving
25 Defendant's wallet and driver's license in the vehicle.  (Collision Site Body Cam, .45-1:05, Gov.
26 Ex. 9.)

27       12.      Approximately an hour to an hour and a half after the accident, Defendant called
28 911 reporting that an ambulance was needed for a friend that had been driving up the street and

1  was injured when he drove into a parked car.  (Traffic Collision Report Narrative, Gov. Exh. 1; 911 call, Gov. Exh. 6; Interview Body Cam, 1:48-50.)

13. Defendant was intoxicated when the police arrived to investigate.  (Traffic Collision Report Narrative; Interview Body Cam.)

14. Initially, Defendant stated that he was not in the vehicle, that he had been sleeping at the time of the accident, and had not been involved in the accident.  (Interview Body Cam, :07-:13, 7:56-8:00.)

15. Defendant stated that his buddy and the buddy's friend had taken the vehicle and his buddy returned to the house injured and Defendant told him that he had to report the accident so Defendant called it in for him.  (Id., .42-56.)

16. When asked how he got the cut on his head, Defendant stated he got cut carrying his friend.  (Id., .56-1:10.)

17. After being told that they were not going to arrest anyone from driving under the influence and the officer knew that he was lying, Defendant admitted that he was driving the vehicle at the time of the accident.  (Id., 9:45-13:16.)

18. Defendant was speeding and bottomed out on a dip in the roadway and lost control of the vehicle.  (Id., 15:00-35.)

19. When Defendant saw the damage, he fled the scene because he did not want to get a DUI.  (Id., 15:55-16:00.)

20. They went back to the house to figure out what to do because he had too much to lose. (Interview Body Cam, 15:09-36.)

21. Initially, the passenger in the vehicle stated that someone named Braden was driving the vehicle and freaked out when he saw the damage and left the scene. (Id., 2:07-2:19.)

22. Defendant stated that his friend hobbled down from the accident for an hour and they immediately called to report the accident. (Id., 3:11-3:22.)

23. The crash site was approximately 500 feet from the residence in which Defendant was staying. (Def. Exh. L.)

24. After Defendant admitted to being the driver of the vehicle, the passenger stated

6

that Defendant had been driving the vehicle and had lost control while speeding when he hit a dip in the road colliding with the two vehicles. (Traffic Collision Report Narrative.)

### III.

### LEGAL STANDARDS

The Bail Reform Act of 1984 ("Act"), 18 U.S.C. § 3141, et seq., is the statutory scheme governing the circumstances under which bail may be granted as well as subsequently revoked. United States v. Wong, No. CR 12-00645 LEK, 2012 WL 5464178, at *2 (D. Haw. Nov. 8, 2012). Section 3148 addresses the sanctions for violation of conditions of supervised release. "A person who has been released under section 3142 of this title, and who has violated a condition of his release, is subject to a revocation of release, an order of detention, and a prosecution for contempt of court." 18 U.S.C. § 3148(a). Section 3148 states,

> The attorney for the Government may initiate a proceeding for revocation of an order of release by filing a motion with the district court. A judicial officer may issue a warrant for the arrest of a person charged with violating a condition of release, and the person shall be brought before a judicial officer in the district in which such person's arrest was ordered for a proceeding in accordance with this section. . . . The judicial officer shall enter an order of revocation and detention if, after a hearing, the judicial officer--
> (1) finds that there is--
> (A) probable cause to believe that the person has committed a Federal, State, or local crime while on release; or
> (B) clear and convincing evidence that the person has violated any other condition of release; and
> (2) finds that--
> (A) based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or
> (B) the person is unlikely to abide by any condition or combination of conditions of release.
>
> If there is probable cause to believe that, while on release, the person committed a Federal, State, or local felony, a rebuttable presumption arises that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community. If the judicial officer finds that there are conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community, and that the person will abide by such conditions, the judicial officer shall treat the person in accordance with the provisions of section 3142 of this title and may amend the conditions of release accordingly.

18 U.S.C. § 3148(b).

///

## IV.

## DISCUSSION

### A. Arguments of the Parties

In his briefing addressing detention at the initial appearance, Defendant argues that detention is not appropriate because he is neither a risk for failure to appear or an economic danger to the community. Defendant further argues that extenuating circumstances exist for his violation because his best friend was killed in a head on collision days prior to the incident at issue and his health conditions place him at extraordinary risk due to COVID-19.

The Government counters that the Defendant violated California law and has been charged with misdemeanor hit and run and the evidence shows that he also provided false information to the Pismo Beach Police Department and to his pretrial services officer. The Government argues that Defendant has shown a pattern of non-compliance and lack of candor and request that his pretrial release be revoked and he be detained pending trial because he is a flight risk, poses a danger to the community, and is unlikely to comply with any combination of release conditions.

Defendant replies that the Government's argument that he can be detained solely due to his failure to comply with conditions of release is contrary the argument presented in U.S. v. Manafort, 897 F.3d 340, 345 (D.C. Cir. 2018) where the Government set forth the correct test which requires that he must be found to be a flight risk or a danger to the community. Defendant contends that the violation alleged does not make him an increased flight risk or a danger to the community.

The Government counters that Defendant misrepresents the Government's arguments in Manafort and relies on the Government's brief in which the district court has asked the parties to address both flight and danger as well as whether the defendant was likely to abide by conditions. The Government argues that the order affirming the Manafort decision expressly noted that section 3148(b)(2)(A) and (B) each provide independent basis for upholding the detention order.

///

**B.     Violation of Conditions of Pretrial Release**

Section 3148 provides that the court shall enter an order of revocation and detention, if after a hearing, it is found that there is probable cause to believe that the defendant has committed a Federal, State, or local crime while on release. 18 U.S.C. § 3148(b)(1)(A). "[P]robable cause under section 3148(b)(1)(A) requires only that the facts available to the judicial officer 'warrant a man of reasonable caution in the belief' that the defendant has committed a crime while on bail." United States v. Gotti, 794 F.2d 773, 777 (2d Cir. 1986). "Probable cause means only a 'fair probability,' not certainty, and requires consideration of the totality of the circumstances." United States v. Krupa, 658 F.3d 1174, 1177 (9th Cir. 2011) (citing Illinois v. Gates, 462 U.S. 213, 238 (1983)).

Under California law,

> The driver of any vehicle involved in an accident resulting only in damage to any property, including vehicles, shall immediately stop the vehicle at the nearest location that will not impede traffic or otherwise jeopardize the safety of other motorists. . . . The driver shall also immediately do either of the following:
> (1) Locate and notify the owner or person in charge of that property of the name and address of the driver and owner of the vehicle involved and, upon locating the driver of any other vehicle involved or the owner or person in charge of any damaged property, upon being requested, present his or her driver's license, and vehicle registration, to the other driver, property owner, or person in charge of that property. . . .
> (2) Leave in a conspicuous place on the vehicle or other property damaged a written notice giving the name and address of the driver and of the owner of the vehicle involved and a statement of the circumstances thereof and shall without unnecessary delay notify the police department of the city wherein the collision occurred or, if the collision occurred in unincorporated territory, the local headquarters of the Department of the California Highway Patrol.

Cal. Veh. Code § 20002(a). The failure to comply with the requirements of section 20002 is a misdemeanor. Cal. Veh. Code § 20002(c). The Court considers misdemeanor offense serious and of great concern to public safety and order, since in this present COVID times many of the offense being seen and experienced by the public and charged by law enforcement are misdemeanors offenses. These offense include assault, destruction of property, theft crimes, looting, defacing buildings and alcohol related driving offenses.

The Government has presented evidence that after drinking several beers, Defendant drove his vehicle and lost control while speeding when he bottomed out on a dip in the roadway.

9

1  The vehicle he was driving collided with two other vehicles causing severe damage to the
2  vehicle that Defendant was driving and another vehicle and minor damage to a third vehicle.
3  Defendant and the passenger in the vehicle fled the scene and returned to the house where they
4  were staying because Defendant was afraid that he would get cited for driving under the
5  influence.

6  It was reported to the officers that the occupants of the vehicle were seen running from
7  the scene of the accident and the collision occurred approximately 500 feet from the residence in
8  which Defendant was staying. Defendant called 911 approximately an hour to an hour and half
9  after the collision to request an ambulance for his friend who was injured in the accident and lied
10 to the police about being the driver of the vehicle. Both Defendant and the passenger told
11 officers that a third party had been driving and fled after the accident. Defendant also told
12 inconsistent stories to explain the delay in reporting the accident.

13 Initially, Defendant stated that they called 911 immediately upon the passenger arriving
14 at the house. When first asked if he was in the vehicle, Defendant stated that he was woke up by
15 his friend. He stated he cut his head because he went and carried his friend to the house. When
16 questioned why it took an hour to call 911, he stated that it took his friend an hour to hobble
17 from the accident that was approximately 500 feet from the house. Finally, after admitting that
18 he was driving the vehicle, he stated that he came back to the house to figure out what to do.

19 The Court finds probable cause exists that Defendant violated section 20002(a) by
20 leaving the scene of the accident without notifying the owner of the vehicle or leaving a note and
21 reporting the accident to law enforcement without unnecessary delay.

22 Section 23152 of the California Vehicle Code makes it unlawful " for a person who is
23 under the influence of any alcoholic beverage to drive a vehicle." Cal. Veh. Code § 23152(a).
24 Here, Defendant admitted to drinking several beers prior to driving and fleeing the scene of the
25 accident because he did not want to be cited for driving under the influence. The finds probable
26 cause that Defendant violated section 23152(a) by driving under the influence.

27 Probable cause exists to find that Defendant violated his conditions of release by
28 committing violations of state law while on release.

**C.      Revocation of Conditions of Release**

1. <u>Whether Detention Must be Based on Finding that Defendant is a Flight Risk or a Danger to the Community</u>

The parties dispute whether a finding is required that Defendant is flight risk or danger to the community or if detention can be ordered based solely on a finding that he is unlikely to abide by any condition or combination of conditions of release. The parties do not cite, nor does the Court find any case specifically addressing this issue.

Section 3148 provides that

> The judicial officer shall enter an order of revocation and detention if, after a hearing, the judicial officer--
> (1) finds that there is--
> (A) probable cause to believe that the person has committed a Federal, State, or local crime while on release; or
> (B) clear and convincing evidence that the person has violated any other condition of release; and
> (2) finds that--
> (A) based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or
> (B) the person is unlikely to abide by any condition or combination of conditions of release.

18 U.S.C. § 3148(b).

Defendant relies on the Government's briefing filed in <u>Manafort</u> to argue that detention following a revocation hearing requires a finding that the defendant be a flight risk or a danger to the community. The Government counters that the Government was briefing the issues that were requested by the Court and does not set forth the standard under section 3148(b). In <u>Manafort</u>, the defendant was ordered detained after the trial court found that he violated his conditions of pretrial release by tampering with witnesses. 897 F.3d at 344.

First, the <u>Manafort</u> court found that grand jury indictment of the defendant on the charges was conclusive as to probable cause. <u>Id.</u> The finding of probable cause had raised the rebuttable presumption that there were no conditions or combination of conditions that would assure that the defendant would not be a danger to the safety of any other person or the community. <u>Id.</u> The court then found that the defendant had come forward with some evidence to rebut the presumption of dangerousness. <u>Id.</u> But, the court found that the presumption remained a

11

1 relevant factor and went on to consider dangerousness. Id. The court ultimately found that there
2 were no conditions that would assure that the defendant would not pose a danger to the
3 community if he remained on release. Id. The potential harm related to the danger that he would
4 commit another crime were he to remain on release. Id. at 345. The court weighed the nature of
5 the allegations in the indictment with the presumption that arose from the indictment and found
6 that there were no conditions that would assure the defendant would comply with the most
7 fundamental condition of release under the Bail Reform Act, that he not commit a Federal, State,
8 or local crime while on release. Id.

9 Second, the court found that the defendant could not be trusted to comply with the court's
10 directives with respect to any conditions of release due to the difficulty of monitoring
11 compliance. Id. The conduct at issue had occurred after a stay away order had been put in place
12 and there was a risk that the defendant would interpret any order issued and it was impossible to
13 draft an order specific enough to cover every possible violation of the United States Code. Id.
14 The defendant was ordered detained. Id.

15 On appeal, the defendant challenged both findings that the proposed release conditions
16 would not assure the safety of the community under § 3148(b)(2)(A), and that he was unlikely to
17 abide by any conditions of release under § 3148(b)(2)(B). Id. The appellate court held that since
18 either finding provides an independent basis for detention, it need not address dangerousness
19 finding no clear error in the district court's finding that the defendant would be unlikely to abide
20 by any conditions of release. Id. The appellate court found that the district court erred by
21 finding that the defendant violated the stay away order, but that the error did not impact the
22 ultimate finding that the defendant was unlikely to abide by the fundamental condition of release
23 that he not violate any Federal, State, or local law based on his conduct during the prior six
24 months in which he had been released. Id. at 347. The defendant had been warned that he was
25 "skating close to the line" and he failed to heed those warnings, going right past the line by
26 tampering with witnesses. Id.

27 The Manafort court's holding that either finding provided an independent basis for
28 detention is consistent with the language of the statute itself which states that the detention can

be based on a finding that "(A) based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; **or** (B) the person is unlikely to abide by any condition or combination of conditions of release."  18 U.S.C. § 3148(b)(2) (**emphasis added**).

Defendant argues that the finding must be based on a finding of dangerousness or risk of flight citing the concurring opinion in United States v. Howard, 793 F.3d 1113 (9th Cir. 2015). However, in Howard the appellate court was addressing a finding that the defendant posed a danger to the community.  793 F.3d at 1113.  The matter was remanded upon a finding that it was unclear if the court found that the defendant had violated his conditions of release by clear and convincing evidence. Id.  The concurrence was addressing danger under section 3142(g) and whether talking to witness could be considered witness tampering.  Id. at 1113-14.  The concurrence did not address the failure to abide by conditions of confinement under section 3148(b)(2)(B).

Defendant similarly relies on United States v. Parker, 65 F.Supp.3d 358, 363 (W.D.N.Y. 2014) which cites a footnote in Gotti stating that "despite the two separate factors that should be considered as part of the second step of the § 3148(b) analysis, the inquiry overlaps and arguably requires consideration of the same elements."  However, an argument that the factors should be considered is not sufficient to overcome the clear language of the statute.

The starting point in discerning congressional intent is the existing statutory text.  Lamie v. U.S. Tr., 540 U.S. 526, 534 (2004).  Courts determine whether the meaning of the statute is plain from the statutory language on its face.  United States v. Luna, 768 F.Supp. 705, 707 (N.D. Cal. 1991), aff'd sub nom. United States v. Perez Luna, 15 F.3d 1093 (9th Cir. 1993).  It is well established that "when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." Lamie, 540 U.S. at 534 (quoting Hartford Underwriters Ins. Co. v. Union Planters Bank, N. A., 530 U.S. 1, 6 (2000); United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 241 (1989); and Caminetti v. United States, 242 U.S. 470, 485 (1917)).

Section 3148(b) provides for two steps to be considered in entering an order of revocation and detention. First, under subsection (b)(1), the Court considers if there is "(A) probable cause to believe that the person has committed a Federal, State, or local crime while on release; or (B) clear and convincing evidence that the person has violated any other condition of release." Upon finding that a violation has been established, the Court then considers if "(A) . . . there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or (B) the person is unlikely to abide by any condition or combination of conditions of release." 18 U.S.C. § 3148(b).

In construing the statute courts are to "adhere to the usual axiom that Congress 'says in a statute what it means and means in a statute what it says there." United States v. Romo-Romo, 246 F.3d 1272, 1274 (9th Cir. 2001) (quoting Hartford Underwriters Ins. Co., 530 U.S. at 5 (citation omitted). In doing so "we should usually give words their plain, natural, ordinary and commonly understood meanings." Romo-Romo, 246 F.3d at 1274. Here, it is clear that the Legislature understood the difference between "and" and "or" as they are both used in the statute. Review of the statute demonstrates that at least one condition from section (b)(1) and one condition from section (b)(2) must exist. If the intent was that both conditions from section (b)(2) must exist then Congress would have used "and" rather than "or" in drafting the statutory language. Further, requiring a finding that the defendant is a flight risk or danger would make (b)(2)(B) superfluous. "It is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.' " TRW Inc. v. Andrews, 534 U.S. 19, 31 (2001) (quoting Duncan v. Walker, 533 U.S. 167, 174 (2001)).

The Court construes the statutory language as it is clearly written to require either a finding that "(A) . . . there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or (B) the person is unlikely to abide by any condition or combination of conditions of release."

Here, based on the evidence presented and considered in the evidentiary hearing, the Court finds that Defendant is unlikely to abide by any condition or combination of conditions of

14

release. However, for the reasons discussed below, the Court also finds that Defendant is a danger to the safety of the community because he is unlikely to abide by any condition or combination of conditions of release.

### 2. Defendant Poses a Risk of Danger to the Safety of the Community

The determination of whether there is no condition or combination of conditions of release that will assure that Defendant will not flee or pose a danger to the safety of any other person or the community or that he is unlikely to abide by any condition or combination of conditions of release under section 3148(b)(2) may be established by a preponderance of the evidence. Gotti, 794 F.2d at 778.

Initially, the Court rejects Defendant's argument that he is not a financial danger and therefore revoking his conditions of pretrial release is not appropriate. "Nothing in the text of Section 3142 (or Section 3148) states that consideration of a defendant's dangerousness is limited to evidence that relates to the pending charges against that defendant." United States v. Fulkerson, No. CR12-3049-MWB, 2012 WL 5898948, at *4 (N.D. Iowa Nov. 21, 2012).

Under the Act, a bail hearing "may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f). However, while sections 3142(e) and (f) apply when the court is "ruling on a motion for detention at the outset of a case, an entirely different set of standards governs whether the court detains a defendant charged with violating conditions." ." United States v. Soria, No. 2:11-CR-00156-LDG, 2011 WL 3651272, at *5 (D. Nev. Aug. 17, 2011) (quoting Weinberg, FEDERAL BAIL AND DETENTION HANDBOOK (2011) § 11.03). "If a condition of pretrial release has been violated, a request to revoke a release order proceeds not under the initial release detention statute, 18 U.S.C. § 3142, but under 18 U.S.C. § 3148." United States v. Gill, No. CR S-06-0312-LKK (GGH), 2008 WL 2120069, at *1 (E.D. Cal. May 20, 2008). "The standards under each statute are markedly different." Gill, 2008 WL 2120069, at *1. "Unlike § 3142(f), there is

no limitation in § 3148(b) regarding the types or categories of Federal, State, or local crimes that will support an order revoking pretrial release." United States v. Slade, No. CR-09-1492-1-PHX-ROS, 2013 WL 2455926, at *6 (D. Ariz. June 5, 2013) (quoting Soria, 2011 WL 3651272, at *6).

Further, the Bail Reform Act sets forth the specific types of criminal charges that initially qualify a defendant for pretrial detention as a serious or substantial risk of danger to other persons or the community. 18 U.S.C. § 3142(f)(A)-(E). " 'Economic crimes' such as mortgage or financial fraud do not qualify as such offenses." Soria, 2011 WL 3651272, at *5 (citing United States v. Giordano, 370 F.Supp.2d 1256, 1261–62 (S.D. Fla. 2005); United States v. Himler, 797 F.2d 156, 160 (3rd Cir. 1986); United States v. Byrd, 69 F.2d 106, 109–10 (5th Cir. 1992); and United States v. Ploof, 851 F.2d 7, 11 (1st Cir. 1988).

While economic crimes will not ordinarily trigger the danger to the community analysis in initial detention hearings, "in post-initial detention proceedings, the Ninth Circuit has unequivocally ruled that economic harm may be considered as a justification for detaining someone as a danger to the community." Gill, 2008 WL 2120069, at *3; see United States v. Reynolds, 956 F.2d 192, 192 (9th Cir. 1992) (affirming request for bail pending appeal and a violation of pretrial release and holding "danger may, at least in some cases, encompass pecuniary or economic harm"). "Courts have long recognized that 'danger' in the context of § 3148 refers to unlawful conduct, with little distinction between whether the nature of the conduct is economic or physical." Slade, 2013 WL 2455926, at *6 (quoting Wong, 2012 WL 5464178, at *4).

Here, the Government has presented evidence that Defendant has violated his terms of pretrial release and the violations are becoming more serious. Further, there is strong evidence that Defendant has mislead pretrial services and law enforcement regarding the violations. In fact, this defendant has a history of being less than candid with his pretrial services officer. This is not game of catch me if you can, feign ignorance and ask for forgiveness. To condone defendant's conduct and lack of candor to his pretrial services officer, is to show disdain to the office and the officer. The Court expects that its orders be followed from the outset and this

1    defendant has been given plenty of opportunities to heed that warning.

2    Initially, Defendant's terms of release provided that he was limited to travel in the
3    Eastern District of California, and later amended to allow travel in the State of California.
4    However, Defendant procured tickets to travel out of state to New York without the approval of
5    his pretrial services officer.

6    Thereafter, Defendant purchased tickets to travel to Mexico for a medical procedure
7    without receiving prior approval from his pretrial services officer or the court to travel
8    internationally. He then filed a motion to modify his conditions of release to allow him to travel
9    to Mexico. At the hearing on Defendant's request to modify his conditions of release, Judge
10   Grosjean found that Defendant was not taking his conditions of release seriously and
11   admonished him that the failure to do so would result in him being placed in custody.[1]

12   At the time of the hearing on the motion, it was discovered that Defendant had violated
13   his conditions of release by obtaining the financial information of a client. During the
14   investigation into the violation, Defendant made multiple misstatements to downplay his access
15   to the materials. He asserted that he never actually received the attachments to the email and
16   sent the email immediately to his business associate. (Gov. Exh. 2.) But Defendant received the
17   email on February 24, 2020, and did not forward it to his associate until February 26, 2020.
18   (Gov. Exh. 5 at 2-3.) In a recorded phone call on February 26, 2020, Defendant discussed the
19   content of the client's 2017 and 2018 tax returns in detail making it clear that he did review the
20   materials. (Motion to Revoke Order of Release, 3-4, exhibit D at 10:33-10:44.)

21   In the current incident, despite the previous finding that he was not taking his conditions
22   of release seriously and the warning that he was in danger of going into custody, Defendant

---

[1] You booked an international trip without talking to Pretrial Services. Most people do not get permission to travel internationally. I am -- if not surprised, I admire Ms. McConville's compassion in saying that she might allow such a thing. She did not have to do that. International travel is generally not done. And after you booked a trip to New York, which is also just outside a condition, I don't think you're taking it seriously that you are supposed to be here. And if you are not complying with these conditions, we'll just detain you like so many people get detained. You were here. You saw people, and people who I think may have less of a chance of -- well, I don't know. People get detained, and you're not taking it seriously.

(Transcript of Mot. to Modify Release Conditions, 13:19-14:8, ECF No. 54.)

chose to drive while under the influence and then fled the scene to avoid being charged with a DUI. Defendant caused injury to the passenger in his vehicle and significant property damage to his vehicle and the vehicle he collided with as well as minor damage to a third vehicle when he was speeding after having been drinking. Defendant told law enforcement that he had been sleeping when the accident occurred and he was not the driver of the vehicle. He continued to mislead the officers until he was informed that he would not be charged with driving under the influence and would not be going to jail. It was only at that point that Defendant admitted that he had been drinking and was the driver of the vehicle.

When he called to talk to Pretrial Services Officer McConville about the incident, he reported that he had swerved to avoid hitting an animal in the roadway and had side swiped another vehicle. He stated he had not been drinking and had driven the vehicle home because he had injured his leg and had called the police to report the accident. Even after she received the police report, Officer McConville spoke to him at length and he continued to deny drinking, even stating it was impossible for him to consume alcohol, and that the police were lying. But, on the night in question, he admitted to the officers that he had drank several beers before driving the vehicle. When asked by defense counsel why he would contact her and lie, Officer McConville stated that she believed that he contacted her because he was desperate and he was trying to manipulate her into not filing the violation.

The Court finds that based upon the evidence before the Court of Defendant's conduct during the year that he has been out of custody on pretrial release, he has demonstrated that he is not willing to abide by the conditions that have been imposed, he has a history of not being truthful when confronted with his misconduct, and his conduct is escalating such that he is a danger to the community.[2]

---

[2] Defendant argues that due to his health conditions and the current COVID-19 pandemic, he should not be placed in custody and should remain out on pretrial release. However, Defendant has not shown any conditions of release that could be imposed that would protect the safety of the community. Defendant argues that the Court can impose additional conditions and he will abide by them, but the evidence demonstrates that he cannot be supervised due to his lack of candor with his pretrial services office and law enforcement. It appears clear to the Court that Defendant will say whatever he believes is necessary to minimize his conduct and avoid accepting responsibility for his actions. It is also clear that his 3rd party custodian, his girlfriend, has been less than adequate and frankly in the travel situation to New York, participated in the conduct without notifying pretrial services, a duty she owes to the Court (not to her boyfriend and their economic interests). This condition of a third party custodian is simply

**V.**

**CONCLUSION AND ORDER**

For the reasons discussed, the Court concludes, that probable cause exists that Defendant Patterson has committed a Federal, State, or local crime while on release, and pursuant to 18 U.S.C. § 3148(b), he is unlikely to abide by any condition or combination of conditions of release, and he is a danger to the community.  Therefore, Defendant Patterson's pretrial release will be revoked and that he will be detained.

Accordingly, IT IS HEREBY ORDERED that Defendant Patterson's pretrial release is revoked and that he be detained pending trial in this case.

IT IS SO ORDERED.

Dated:   **October 21, 2020**

_____
UNITED STATES MAGISTRATE JUDGE

---

inadequate and constitutes another condition which this court could not impose on the defendant to ensure that he abides by his conditions.  He has had this condition for some time and yet it has not worked for him.