McGREGOR W. SCOTT
United States Attorney
VINCENTE A. TENNERELLI
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile:  (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>   v.<br><br>KENNETH SHANE PATTERSON,<br><br>   Defendants. | CASE NO. 1:19-CR-230-DAD-BAM<br><br>GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO REVOKE PRETRIAL DETENTION ORDER AND FOR TEMPORARY RELEASE<br><br>DATE: November 16, 2020<br>TIME: 9:00 a.m.<br>COURT: Hon. Dale A. Drozd |

The government submits this opposition to defendant's Motion to Revoke Pretrial Detention Order and for Temporary Release [Docket No. 84].

## I. INTRODUCTION

While on pretrial release on September 19, 2020, defendant Kenneth Shane Patterson drove on a residential street in Pismo Beach while under the influence of alcohol. He crashed his car into two parked cars. One of the cars sustained severe damage. He then fled the scene to avoid a DUI. When police found and questioned him, he falsely told them he was not the driver. Then, when he reported the incident to Pretrial Services, he falsely stated that he was not drinking at the time of the incident and had merely "side-swiped" another car. Pretrial Services filed a Pretrial Release Violation against defendant.

After a contested hearing on the violation, Magistrate Judge Stanley A. Boone correctly found probable cause that defendant broke the law while on release and found that defendant is unlikely to abide by conditions and poses a danger to the community. On those bases, he revoked defendant's

release and detained him under 18 U.S.C. § 3148(b). Under that section, a court "shall enter an order of revocation and detention" if, after a hearing, the court finds probable cause that a defendant has committed a crime and finds either that there are no conditions that would adequately address flight and danger (Section 3148(b)(2)(A)) or that the defendant is unlikely to abide by release conditions (Section 3148(b)(2)(B)). Judge Boone ordered detention on the bases that defendant was unlikely to abide by release conditions and posed a danger to the community. Dkt. 79 at 19.

The record supports Judge Boone's findings. Defendant violated California's hit-and-run and DUI statutes during the September 19 Pismo Beach incident. And he has shown by his conduct since release—which includes two serious violations of conditions and false statements to the government, Pretrial Services, and the police—that he will not abide by conditions and is a danger to the community.

## II.   FACTS

### A.   Defendant is indicted and released on conditions.

Defendant was indicted in October, 2019, on six counts of wire fraud, one count of bank fraud, and one count of evading the payment of income tax. Dkt. 1. At his initial appearance on November 1, 2019, the Court released defendant on conditions that included the standard prohibitions against violating any federal, state, or local law while on release (Condition 1) and on travel outside the Eastern District of California without approval (Condition 7(c)). Dkt. 6. Additionally, in light of evidence that defendant—a loan broker by trade—had misused his clients' tax information, the government requested a condition, which the Court imposed, that defendant not engage in any business providing access to private financial or tax information (Condition 7(l)). *Id.* Defendant signed the conditions, acknowledging that he was "aware of the conditions of release" and "promise[d] to obey all conditions." Dkt. 6 at 3. The Court designated defendant's significant other as a third-party custodian. *Id.* at 2.

At defendant's request, the government and defendant negotiated an amended Condition 7(l) shortly after the initial appearance, allowing defendant to continue his work as a broker so long as he did not access his customers' private financial information and instead had it routed to his associate, Matthew Peterson. Dkt. 9. The parties also amended Condition 7(c) so defendant could travel throughout California. *Id.* The Court approved the amended conditions on November 8, 2019. Dkt. 10.

Jessica McConville, defendant's Pretrial Services Officer, testified at the hearing on defendant's

recent pretrial violation. *See generally* Ex. 7 hereto at 4-38 (Tr. Oct. 21, 2020 Pretrial Revoc. Hr'g.) McConville described her standard practice when a defendant is released on conditions. *Id.* at 6:14-22. "As soon as someone is released from custody," McConville stated, Pretrial Services meets with the defendant in person and "go[es] over [the defendant's] conditions of release and inform[s] them of expectations of being on pretrial release, what to expect, and the consequences should they fail to meet the Court's conditions or should they violate the Court's conditions." *Id.*

### B. Defendant receives a warning from Judge Grosjean after booking travel twice without Pretrial Services' approval.

On February 24, 2020, defendant moved to modify Condition 7(c) so he could travel to Mexico for a medical procedure. Dkt. 16. Defendant had booked the travel before consulting with Pretrial Services. Dkt. 54 at 2:12-15 (statement by Def.'s prior counsel at Feb. 26 Hr'g). Judge Grosjean held a hearing on the request two days later. Dkt. 18. The government had just completed its investigation of defendant's violation of Condition 7(l), *see* § II.C, *infra*, and therefore opposed the travel request and described that violation to Judge Grosjean. Dkt. 54 at 5:13-8:15. In denying the travel request, Judge Grosjean noted that the conduct the Government described seemed to be a "serious violation," *id.* at 13:12, that defendant had "booked an international trip without talking to Pretrial Services" and that Judge Grosjean did not "think [defendant was] taking it seriously that [he is] supposed to be here." *Id.* at 14:2-3. Judge Grosjean stated, "People get detained, and you're not taking it seriously." *Id.* at 14:7-8.

### C. Defendant violates Condition 7(l) when he obtains and reviews a customer's private financial information.

On March 2, 2020, the government moved to revoke defendant's release on the basis that he had obtained a customer's private financial and tax information in violation of Condition 7(l). Dkt. 19. The customer and her accountant had emailed the customer's tax and financial information to defendant because she was pursuing a small business loan. Dkt. 19, Ex. C at 3-7. During a recorded call on February 26, 2020, defendant discussed the tax and financial information he had received with the customer, describing the contents of her 2017 and 2018 tax returns in detail. *Id.*, Ex. D at 10:33-10:43.

After the call, the government contacted defendant's counsel to discuss the violation. Defendant informed the government by email that he had not actually received the customer's financial information and that he had "immediately" forwarded the customer's emails to Matthew Peterson. *See* Ex. 1 hereto

(emails between government and defendant's former counsel). These statements were not accurate. The monitored call makes clear that defendant did receive the information, *see* Dkt. 19, Ex. D at 10:33-43, and that he did not forward it to Peterson for 48 hours, *see id.*, Ex. C at 1-4. At a hearing on June 22, 2020, defendant admitted to violating Condition 7(l). Dkt. 37. Judge Boone ordered defendant released and modified Condition 7(l) to its original, more restrictive version. *Id.* Again, defendant signed the conditions and promised to obey them. Dkt. 38 at 3.

### D. Defendant violates Condition 1 when he engages in a hit and run while driving under the influence of alcohol.

On September 28, 2020, Pretrial Services filed a pretrial release violation petition against defendant arising from an incident during which defendant crashed into two parked cars, fled the scene, and told officers and Pretrial Services a false story. *See* Dkt. 44; Ex. 2 hereto (police report).

According to the police report of the incident, Pismo Beach police responded to calls of a traffic collision around midnight on September 19, 2020. Ex. 2 at 9-10. Witnesses reported seeing two men running from the scene. *Id.* at 10. Defendant had crashed into two stationary cars, causing "severe damage" to one. *Id.* His passenger sustained a shoulder injury. *Id.* at 11. The diagram below, from the police report, depicts the collision. *See Id.* at 14. The red circle, which the government has added, identifies defendant's car.



The following screenshot, taken from police bodycam footage of the incident, shows the damage the collision caused to defendant's car. *See* Ex. 3 at 5:47; Ex. 4 (902(11) certificate).



As depicted in the screenshot below from the bodycam footage, the collision occurred on a residential street. *See* Ex. 3 at 4:10.



The police report indicates that defendant called the police "1-1.5 hours after the collision," and officers thereafter met defendant at a nearby residence. Ex. 2 at 11. In the 911 call, defendant speaks slowly and sounds inebriated. *See generally* Ex. 5 hereto (911 call); *see also* Ex. 4 (902(11) certificate). During the call, Defendant identifies himself by name, Ex. 5 at :40-:45, and tells the operator that his friend has gotten into an accident, *id.* at :15-:25, that his friend's "ribs are all jacked up," *id.* at :22-:27, that the friend "needs to go to the hospital," *id.* at :24-:28, and that defendant "was asleep," *id.* at :30-:33.

After defendant called 911, officers arrived at the address defendant provided in the 911 call, approximately .2 miles from the accident. *See* Ex. 8 (map showing 2500 Coburn Lane (site of accident) and 173 Baker Avenue (residence defendant provided)). There, officers spoke with defendant and his

injured passenger. *See generally* Ex. 6 (bodycam of interviews as residence); *see also* Ex. 4. Bodycam footage of these interviews, attached as Exhibit 6, shows the following:

- At :08-:13, the start of the footage, defendant tells police that he was not in the car that crashed and that he "got woke up."
- At :40-:48, defendant confirms that he is the owner of the car that crashed. He states that his best friend and a "buddy" took his car to get more beer and "one of them wrecked it."
- From approximately 2:00 to 9:00 on the recording, officers begin questioning defendant's friend. Defendant stands nearby and periodically interrupts the interview and repeatedly instructs his friend not to speak to officers.
- At 6:52-7:50, defendant's friend removes his shirt at the officers' request to show officers his injuries. He notes pain on his right shoulder, which "feels like a separated shoulder."
- At 7:50-57, defendant states that he was at the house at the time of the accident.
- At 10:50-10:57, defendant states that his friend and the buddy "had weed in the car."
- At 11:55-12:40, defendant began asking the police what his friend "or anybody" was "looking at right now." The police responded that defendant would not be going to jail, that the police were not pursuing a DUI, and that they were investigating a hit and run.
- At 12:50-12:55, defendant tells the questioning officer, "You know what happened. Just don't fuck us over."
- At 13:13-13:25, defendant admits he was driving the vehicle. He apologizes to the questioning officer.
- At 16:10-16:25, the officer states to defendant, "You didn't want to get a DUI." defendant responds, "Yeah, bro. 100 percent." Defendant then says he had "a few beers watching the fight" and that he and his friend "wanted more ice."
- At 16:35-16:42 and 17:10-15, the officer asks, "You're not injured?" Defendant responds, "No, I'm fine." Defendant tells the officer he does not need to be examined by medics.

Following the incident, the Pismo Beach Police Department forwarded the case for prosecution under Section 20002(a)—misdemeanor hit and run. Ex. 2 at 12.

At the hearing on defendant's pretrial release violation, Pretrial Services Officer McConville

testified that she spoke with defendant after the incident, stating the following: defendant reported the incident to Pretrial Services on September 21, 2020. Ex. 7 at 8:24-9:3. Officer McConville spoke with defendant about the incident over the phone, and defendant's account was not consistent with the police report or the bodycam footage. He told McConville that the incident occurred when he "swerved to dodge an animal from the road, which caused him to sideswipe another vehicle." *Id.* at 9:4-11. He also stated that he needed to leave the scene because the accident burned his leg, and he did not have his cell phone. *Id.* at 9:12-18. Defendant denied drinking and driving. *Id.* at 9:19-10:1.

After Officer McConville received the police report, which showed that defendant admitted he fled the scene to avoid a DUI, caused "severe damage" to a vehicle, and had not initially been truthful with police, McConville again spoke with defendant. *Id.* at 26:3-27:15. He "continued to deny that he was drinking" on the night of the incident and "insinuated that maybe [the police] were" lying in the police report about him drinking. *Id.* at 26:9-11, 27:12-15. After speaking with defendant, McConville filed a Pretrial Release Violation Petition. Dkt. 44.

### E. Judge Boone revokes defendant's pretrial release and detains defendant on the basis that defendant is unlikely to abide by conditions and is a danger to the community.

Judge Boone held a hearing on the alleged violation on October 21, 2020. *See generally* Ex. 7. The government and defendant also submitted substantial briefing regarding the Petition in advance of the hearing. *See generally* Dkts. 49, 59, 66, 73, 75. Judge Boone permitted the parties to call witnesses and submit evidence. Ex. 7 at 3:23-24. In addition to calling Officer McConville, the government played the 51-second 911 call in its entirety, *id.* at 13:5-7, several minutes of footage from the crash site, *id.* at 15:16-17, and the 18-minute bodycam footage from defendant's residence in its entirety, *id.* at 16:12-20. After the parties presented evidence and argument, Judge Boone revoked defendant's pretrial release and ordered him detained under 18 U.S.C. § 1348. *Id.* at 85:14-17. Judge Boone followed his ruling with a written decision, finding probable cause that defendant had committed a crime while on release—specifically by violating California's hit-and-run and DUI statutes—and that defendant is unlikely to abide by any condition or combination of conditions of release and is a danger to the community. Dkt. 79; *see also* 18 U.S.C. § 1348(b)(1)(A)-(B).

### III.   ARGUMENT

Defendant's pretrial violation, coupled with his conduct since his release in November 2019, warrant revocation and detention. Defendant violated California's hit-and-run and DUI statutes on September 19, 2020, when he drove under the influence, had a major crash, and fled the scene. Defendant's conduct during that incident, and later when discussing it with Officer McConville, shows that he cannot be supervised because he will not comply with conditions and will not be candid with Pretrial Services. And before he was detained, defendant's conduct on release was escalating in seriousness and dangerousness. First, he booked travel without prior approval. Then he obtained a customer's financial information in violation of Condition 7(l). And recently, he put the community at significant risk when he drove drunk in a residential neighborhood and caused a major crash. Under 18 U.S.C. § 3148, there is probable cause that defendant broke the law; moreover, defendant is unlikely to follow conditions and is a danger to the community. The standard for revocation and detention, therefore, is met.

#### A.   Revocation under Section 3148 is warranted upon either a finding based on flight/danger or a finding that defendant is unlikely to abide by conditions.

Once a court finds that there is probable cause that a defendant on release broke the law, the court need only find that revocation is justified on the basis of flight or danger *or* that the defendant is unlikely to abide by release conditions.

Under 18 U.S.C. § 3148, in a proceeding to revoke a defendant's pretrial release under 18 U.S.C. § 3148, a court "shall enter an order of revocation and detention if, after a hearing," the Court (1) finds that there is probable cause to believe that the defendant has committed a crime while on release and, (2) finds that either (A) "based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community" ***or*** (B) "the person is unlikely to abide by any condition or combination of conditions of release." 18 U.S.C. § 3148(b).

As made clear by the disjunctive "or," once a court finds probable cause that the defendant committed a crime, it need only find *either* that revocation is appropriate based on flight/danger or that the defendant is unlikely to comply with release conditions. *See* 18 U.S.C. § 3148(b); *see also U.S. v.*

GOV'T RESP. TO DEF'S MOT. REV.                            8

*Manafort*, 897 F.3d 340, 345 (D.C. Cir. 2018) (noting, where defendant challenged district court's findings that revocation was warranted under both Section 3148(b)(2)(A) (flight/danger) and Section Section 3148(b)(2)(B) (defendant unlikely to follow conditions), "Either finding provides an independent basis for detention, so upholding either finding is sufficient to uphold the District Court's detention order.").[1]

Moreover, only Section 3148(b)(2)(A), one of the two grounds for detention under Section 3148, expressly requires courts to consider the factors for assessing flight and danger set forth in 18 U.S.C. § 3142(g), including a defendant's physical and financial condition. Section 3148(b)(2)(B) makes no mention of those factors because they are not relevant to whether a defendant is likely to abide by conditions. *See United States v. Fuller*, 531 F.3d 1020, 1027 (9th Cir. 2008) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.")

Notwithstanding this clear statutory language, defendant argues that revocation may only be ordered if "risk of flight or danger is impacted," even if the defendant is unlikely to abide by conditions. Dkt. 84 at 10-12. The two cases defendant cites do not support his position. Defendant cites a concurring opinion in *United States v. Howard*, 793 F.3d. 1113, 1113-14 (9th Cir. 2015), for the proposition that "Pretrial detention pursuant to § 3148 must be based on considerations of flight or danger to another person or the community." Dkt. 84 at 10. However, that concurrence, in addition to not being precedent, relates only to the circuit judge's view that the release condition at issue in that case was "inappropriate and unfair." 793 F.3d at 1114. The judge does not cite or discuss Section 3148.

The other case defendant cites, *United States v. Parker*, 65 F.Supp.3d 358, 363 (W.D.N.Y. 2014), is similarly unhelpful to defendant's argument. Defendant cites *Parker* for the proposition that, even if a defendant is unlikely to abide by conditions, a court may revoke pretrial release only when "the

---

[1] Defendant argues that, in *Manafort*, the government conceded that revoking pretrial release because a defendant is unlikely to abide by conditions requires an analysis of flight and danger. This is incorrect. The government's appellate brief in Manafort stated, in no uncertain terms, that a finding that a defendant is unlikely to abide by release conditions under 18 U.S.C. § 1348(b)(2)(B) "is an independent basis for finding that a defendant shall be detained" and "does not require consideration of the 18 U.S.C. § 3142(g) factors." Docket 84 at 59.

GOV'T RESP. TO DEF'S MOT. REV.   9

risk of flight or danger is impacted." Dkt. 84 at 11. The holding in *Parker*, however, was that "a finding that the defendant is a flight risk or danger will presumably support a finding that the person is unlikely to abide by conditions of release, and vice versa," not that a court cannot revoke pretrial release once it determines that a defendant has committed a crime and is also unlikely to abide by conditions. *See* 65 F.Supp.3d at 363 (quoting *U.S. v. Gotti*, 794 F.2d 773, 777 (2d Cir. 1986)).

Under the clear text of Section 3148(b)(2), detaining a defendant under Section 3148(b)(2)(A) requires a finding of flight or danger with consideration of 3142(g) factors; detaining a defendant under Section 3148(b)(2)(B) does not.

### B. There is probable cause that defendant violated Condition 1 when he committed a hit and run in violation of Cal. Veh. Code § 20002 and drove under the influence of alcohol in violation of Cal. Veh. Code § 23152.

There is probable cause that defendant broke the law during his September 19, 2020 hit-and-run incident. *See* 18 U.S.C. § 1348(b)(1)(A); *see also* Dkt. 6 (pretrial release conditions). California Vehicle Code § 20002(a) and (c) provides that any person involved in an accident resulting in property damage, including damage to vehicles, must safely stop his vehicle and either locate and notify the vehicle's owner or call the police "without unnecessary delay" and leave written notice of the name and address of the vehicle's driver and owner and a statement of the circumstances of the accident. California Vehicle Code §23152(a) provides, "It is unlawful for a person who is under the influence of any alcoholic beverage to drive a vehicle."

The Pismo Beach police report makes clear that defendant struck two vehicles, causing one "severe damage" on the night of September 19. *See* Ex. 2 at 10. The report also makes clear that defendant ran from the scene because he feared he would receive a DUI. *See id.* at 10-11. He also waited "1-1.5 hours after the collision" to call the police. *Id.* at 11. There is no indication that he located the owner or left the required notice at the scene, and he did not call the police "without unnecessary delay." There is, therefore, "probable cause to believe that [defendant] has committed a Federal, State, or local crime while on release." *See* 18 U.S.C. § 3148(b)(1)(A).

In addition to fleeing the scene, defendant was driving under the influence of alcohol when he crashed. In defendant's 911 call, he speaks slowly and sounds inebriated. *See* Ex. 5. He also responded, "Yeah, bro. 100 percent," when a police officer asked him if he left the accident scene because he

"didn't want to get a DUI." Ex. 6 at 16:10-16:25. Defendant also admitted to the officer that he'd had "a few beers watching the fight." *Id.* Finally, the accident itself is evidence defendant was driving under the influence. He hit two parked cars on a residential street, causing major damage to one of the cars he struck and his own car.

The police report, 911 call, and bodycam from defendant's September 19 incident makes clear that he violated California Vehicle Code Cal. Veh. Code §§ 20002 and 23152.

### C.  Defendant is unlikely to abide by any condition or combination of conditions of release.

In addition to there being probable cause that defendant broke the law, it is also clear that defendant is "unlikely to abide by any condition or combination of conditions of release." *See* 18 U.S.C. § 3148(b)(2)(B). Accordingly, revocation is warranted.

Defendant's conduct while on release shows that he is not taking his pretrial release seriously, has repeatedly failed to be truthful, and is unlikely to abide by any condition or combination of conditions. This latest violation reflects a clear pattern of noncompliance by defendant. Over seven months ago, Judge Grosjean warned him that he was "not taking [his release conditions] seriously." Dkt. 54 at 14:7-8. He has twice violated those conditions, and those violations were serious. His February 2020 violation of Condition 7(l) was intentional. He did not merely accidentally receive a customer's financials; he accessed them and reviewed them in detail. *See* Dkt. 19, Ex. D at 10:33-43. Then, on September 19, 2020, defendant broke the law during his crash—by driving under the influence—and immediately thereafter—by fleeing the scene.

In addition to violating his conditions, and perhaps more importantly, defendant has repeatedly shown a lack of candor when confronted with his conduct. His account to Officer McConville after his September incident was false. He told he "side-swiped" a car and denied he was drinking. Ex. 7 at 9:4-10:1. Even after Officer McConville had seen the police report and confronted defendant about his false statements, defendant "continued to deny that he was drinking" on the night of the incident and "insinuated that maybe [the police] were" lying in the police report about him drinking. *Id.* at 26:9-11, 27:12-15.

Defendant urges that he is not a flight risk or a danger to the community. But even if that were

GOV'T RESP. TO DEF'S MOT. REV.                                                     11

true—and the evidence shows it is not—defendant provides no evidence that he is now ready to comply with his conditions of release despite repeatedly failing to do so since November 2019. None of the circumstances defendant points to—including his financial obligations and the COVID-19 pandemic—are new. They were all in place on September 19, 2020, and they didn't keep defendant from violating his conditions. Moreover, defendant has had a third-party custodian since his release but has nonetheless violated his conditions repeatedly.

Defendant points to *United States v. Dreier*, 596 F.Supp. 831 (S.D.N.Y. 2009), in arguing that "while candor is a factor to consider it is not a basis for detention." Dkt. 84 at 7. But *Dreier* is a bail review case under 18 U.S.C. § 1342, *see* 596 F.Supp. at 832, which lacks the "unlikely to abide by conditions" basis for detention in Section 3148. Moreover, the defendant in *Dreier* offered an extensive bail package that included a $10 million bond, home detention, armed guards at his expense to prevent his escape, no computer access, strict Pretrial Services supervision, and ongoing cooperation in finding and preserving assets for victims. 596 F.Supp. 833. And even that wasn't enough. The court required five additional conditions. *Id.* Defendant has presented no such proposed release package that would ensure the community's safety and make it likely that defendant would comply with release conditions.

### D. There is no condition or combination of conditions of release that will assure that Defendant will not pose a danger to the community.

Because defendant is unlikely to abide by conditions of release, the Court need not find that defendant is a danger to the community to revoke pretrial release. *See* §III.B.1, *supra*. Yet defendant's conduct since release has made clear that defendant is a danger to the public.

Defendant argues that the September 19 incident is not relevant to the danger analysis because he "is charged with economic crimes . . . and the Pretrial Release Violation conduct has no relation to economic crime." Dkt. 84 at 5. But "danger" does not mean the same thing in Section 3142 as it means in Section 3148. "The standards under each statute are markedly different." *U.S. v. Gill*, No. CR S-06-0312-LKK (GGH), 2008 WL 2120069, at *1 (E.D. Cal. May 20, 2008). "Unlike § 3142(f), there is no limitation in § 3148(b) regarding the types or categories of Federal, State, or local crimes that will support an order revoking pretrial release." *United States v. Slade*, No. CR-09-1492-1-PHX-ROS, 2013 WL 2455926, at *6 (D. Ariz. June 5, 2013) (citation omitted). For instance, under Section 3148(b),

"economic harm may be considered as a justification for detaining someone as a danger to the community." *Gill*, 2008 WL 2120069, at *3. "Danger" under Section 3148 "refers to unlawful conduct, with little distinction between whether the nature of the conduct is economic or physical." *U.S. v. Slade*, No. CR-09-1492-1-PHX-ROS, 2013 WL 2455926, at *6 (D. Ariz. June 5, 2013) (citation omitted).

Both of defendant's violations put the public at risk. Condition 7(l) protects the public from defendant misusing customers' information, and defendant violated that condition. Moreover, the fact that defendant's crash injured only his passenger is lucky; his conduct was dangerous and reckless and could very easily have resulted in injury to pedestrians or other motorists. As Judge Boone noted in his written decision, defendant "has demonstrated that he is not willing to abide by the conditions that have been imposed, he has a history of not being truthful when confronted with his misconduct, and his conduct is escalating such that he is a danger to the community." Dkt. 79 at 18.

### E. Defendant's arguments against revocation are not relevant to whether detention under Section 3148 is warranted.

While defendant argues that he should not be detained because he helps support six dependents and has multiple risk factors for COVID-19, *See* Dkt. 84 at 7, none of those points makes defendant less of a danger or makes him more likely to abide by conditions of release. 18 U.S.C. § 3142(g) requires courts to consider factors such as a defendant's physical condition and financial condition, but only for the purpose of determining "whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community." Here, there is no reason to believe that defendant poses less of a danger, or is likely to abide by release conditions because he has significant financial obligations and health issues. Indeed, those circumstances existed on September 19 and did not deter defendant from breaking the law.

Defendant argues that he has various health conditions that require special care and make him uniquely susceptible to COVID-19. Dkt. 84 at 13. As with defendant's financial obligations, however, defendant's health conditions, as well as the COVID-19 pandemic, are not new. These conditions were in place on September 19, when defendant committed his hit and run. Moreover, defendant's health issues do not make him less of a danger, nor do they make him more likely to comply with pretrial release conditions.

In addition to the fact that defendant's physical condition does not make him more likely to abide by conditions or ensure the community's safety, defendant provides no support for his contention that Fresno County Jail is not equipped to treat him. Defendant's doctor lists several health conditions from which defendant currently suffers. *See id.*, citing Dr. Guzman Rpt., filed under seal. Defendant contends that "[a] jail cannot provide a healthy environment for a person with these conditions." The Fresno County Jail has confirmed, however, that it can treat defendant's conditions. Dkt. 75-1. The government also notes defendant's doctor's conclusion that defendant "was not drinking" during the hit-and-run incident and "would not have been able to start and drive a car due to his Gastric Sleeve surgery." Yet defendant admitted that he fled to avoid a DUI and was the person driving the vehicle. If the doctor's conclusions are based on defendant's statements to the doctor, defendant apparently provided his doctor with information that was not true.

Additionally, even if the risk of defendant contracting COVID-19 were relevant to danger or the likelihood that defendant will follow conditions, defendant's argument ignores the current COVID-19 situation at Fresno County Jail. Out of over 2,000 inmates, there are now approximately 17 known COVID-infected inmates at the jail. Moreover, the jail continues to follow extensive COVID-19 mitigation protocols. *See* Ex. 10.

### F. **Defendant's request for temporary release is not properly before the Court.**

In his motion to revoke, defendant moves for temporary release under Section 3142(i)(4). Dkt. 84 at 12. Defendant has not, however, sought this relief before a Magistrate Judge, as he is required to do under Eastern District of California Local Rule 302(b)(1).

### IV.    CONCLUSION

Given defendant's repeated pretrial release violations and lack of candor, the Magistrate Judge properly detained Patterson. Denial of defendant's motion to revoke is warranted.

Dated: November 4, 2020

McGREGOR W. SCOTT
United States Attorney

By:  /s/ VINCENTE A. TENNERELLI
VINCENTE A. TENNERELLI
Assistant United States Attorney