UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

HON. DALE A. DROZD, JUDGE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 19-CR-230-DAD |
| | ) | |
| vs. | ) | CHANGE OF PLEA |
| | ) | |
| KENNETH SHANE PATTERSON, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Fresno, California                    Tuesday, October 19, 2021


REPORTER'S TRANSCRIPT OF PROCEEDINGS



**APPEARANCES OF COUNSEL**:


For the Plaintiff:        United States Attorney's Office
                          BY: **VINCENTE TENNERELLI**
                          and **ALEXANDRE DEMPSEY**
                          2500 Tulare Street
                          Suite 4401
                          Fresno, California 93721

For the Defendant:        **GALATEA DeLAPP**
                          Attorney at Law
                          1541 E. Fairmont Avenue #104
                          Fresno, California 93704

                          **MARC DAYS**
                          Attorney at Law
                          1107 R Street
                          Fresno, California 93721

REPORTED BY:  KAREN HOOVEN, RMR, CRR, Official Court Reporter

Proceedings recorded by mechanical stenography, transcript
produced by computer aided transcription.

1   Tuesday, October 19, 2021                    Fresno, California

2   10:47 p.m.

3           THE CLERK:  The Court calls 19-CR-230.  United States

4   versus Kenneth Shane Patterson.  Scheduled for change of plea.

5           THE COURT:  Please state your appearances.

6           MR. TENNERELLI:  Vincent Tennerelli and Alex Dempsey

7   for the government, Your Honor.

8           MS. DeLAPP:  Good morning, Your Honor.  Galatea

9   DeLapp and Marc Days on behalf of Kenneth Shane Patterson, who

10  is present via Zoom conferencing from the central valley annex

11  facility.  And we are consenting to Zoom for this hearing.

12          THE COURT:  And Mr. Patterson, is that the case that

13  you waive any right that you may have to an in-person

14  appearance before the Court for purposes of changing your plea

15  and that you agree to proceed with your change of plea

16  proceeding by way of this video conference with each of us

17  appearing remotely?

18          Oh, we need to get you unmuted there, marshals.  Can

19  he do it himself?  Oh, yeah.  You had it there for a second,

20  Mr. Patterson.  Try it again.

21          THE DEFENDANT:  Yes, Your Honor.  I do agree.

22          THE COURT:  All right.  I find that a national state

23  of emergency has been declared in response to the spread of

24  the Coronavirus.  For everyone's health and safety, the

25  general population of California had been under a

1   gubernatorial order to shelter in place and remains under

2   emergency order.  Detention facilities have imposed

3   quarantines or restrictions on access to detainees for the

4   health of the detainees and the staff.

5          The Judicial Conference of the United States has

6   found that conditions due to the national emergency are

7   materially affecting the functioning of the federal courts.

8   And the judicial council of the Ninth Circuit has certified

9   that emergency conditions existing in the Eastern District of

10  California justify the temporary suspension of the 70-day

11  period to bring defendants to trial.  Public health

12  recommendations and restrictions have impacted this Court's

13  ability to function as it usually does to conduct in-person

14  proceedings and has impaired the availability of counsel, the

15  parties and court staff to be present in the courtroom.

16         I therefore find, pursuant to the CARES Act, that the

17  use of video conferencing to conduct these change of plea

18  proceedings with the consent of the defendant Kenneth Shane

19  Patterson is in the interest of justice and that utilization

20  of such a procedure may prevent the defendant from remaining

21  incarcerated longer than is necessary and will satisfy the

22  objectives of sentencing under the US Sentencing Guidelines

23  and 18 USC Section 3553.  I also find that this change of plea

24  proceeding cannot be further delayed without doing possible

25  serious harm to the interest of justice.

1          So I'm a little bit unclear, though, as to -- I know

2    this is an open plea.  No plea agreement.  But there was some

3    confusing communication as to is there an agreement that Mr.

4    Patterson's not going to be entering pleas of guilty to all

5    charges?  Or is he pleading to the sheet, as they say, and

6    entering a plea of guilty to all charges of the indictment?

7          MS. DeLAPP:  So, first of all, Your Honor, it has

8    always been Mr. Patterson's intention to plead to all of the

9    charges.  But I do want to clarify with the Court.  Yesterday

10   in the afternoon, a memo was produced to the Court by the US

11   Attorney's Office, which we saw for the first time.  We then

12   sent -- there had been no agreement within that memo on

13   anything.  We then sent a factual basis that had been prepared

14   with the consent of the defendant to the Court.  That had been

15   provided to the US Attorney's Office.  And we believe we went

16   through all the jury instructions from the Ninth Circuit on

17   those charges and we believe that the factual basis that was

18   provided satisfies those elements.

19         THE COURT:  And what's the position of the

20   government?  Do we have an agreed upon factual basis or not?

21         MR. TENNERELLI:  Your Honor, the government agrees

22   that the factual basis provided by the defendant provides an

23   adequate factual basis to plead to the counts that he's

24   pleading.  It is not an agreed factual basis.  But we agree it

25   is an adequate factual basis, Your Honor, with the

1   understanding that at sentencing the government is, of course,

2   reserving rights to assert what it views as being the full

3   scope of the charged counts, Your Honor.

4           THE COURT:  Understood.  I mean, defense lawyers

5   often think that by modifying or limiting the factual basis,

6   that somehow that's going to bind the Court at the time of

7   sentencing.  I think everybody knows that it does not.  All it

8   does is delay the fight to another day over what the facts are

9   or are not.

10          MS. DeLAPP:  Just to be clear to the Court.  That is

11  not the belief here of the defense.  We have been

12  attempting --

13          THE COURT:  Well, then let's set the trial date.

14          MS. DeLAPP:  Okay.  No, Your Honor, here, this is

15  something I think it's important for the Court to understand.

16  We have been negotiating in good faith.  But the ability to

17  argue whether certain things would apply or not was not being

18  presented within proposed plea agreement.  And Mr. --

19          THE COURT:  I'm not -- don't.  I don't want to hear

20  about proposed plea agreements.  It's got nothing to do with

21  me.

22          MS. DeLAPP:  But Mr. Patterson has had an awakening

23  and a willingness to accept responsibility.  And does not want

24  to waste the taxpayer's time, the jury's -- money, the jury's

25  time on the issue of whether he's guilty of the charges or

1  not.  And I just want that to be clear to the Court.

2          THE COURT:  Well, that's fine.  But I mean, if the

3  government is satisfied with the factual basis presented by

4  the defense, I will rely upon that factual basis.  I looked at

5  them both.  I think they both are adequate for purposes of

6  accepting the change of plea to the counts.

7          But the defendant, Mr. Patterson, has to understand

8  I'll get a presentence report in this case.  That presentence

9  report is going to tell me everything about the case.  Usually

10 the probation officer has access to all the discovery that's

11 been provided in the case.  And if the defense comes back and

12 says, "No, all we agreed to was the factual basis.  We're

13 not -- we didn't agree to anything else and you shouldn't

14 consider anything else."  That's not a valid objection because

15 I'm not limited to the factual basis for the plea in imposing

16 sentence.

17         And if there's a factual dispute between the parties

18 and it's about a fact that might matter at sentencing, then

19 I'll have to resolve that dispute at the time of sentencing.

20 But Mr. Patterson should not believe that somehow -- by

21 limiting the factual basis, that somehow that limits my

22 consideration of the facts.  That's the only point I'm making.

23         MS. DeLAPP:  Your Honor, Mr. Patterson is abundantly

24 aware of that.  The defense is aware of that.  That has been

25 the aim in every factor in deciding to continue this way.

1          THE COURT:  Okay.  Although Ms. DeLapp, you've been

2    in court with me before and you've seen defense lawyers say,

3    "Well, that wasn't in the factual basis and so you shouldn't

4    consider it."  And I always look at them and say, you know,

5    "No, I can consider it even though you didn't agree to it as

6    part of the factual basis."  So I just want to be very clear

7    about that.

8          MS. DeLAPP:  Understood.

9          THE COURT:  All right.  Well, I think I'm ready to

10   go.  As long as I can get my hands -- now I can't get my hands

11   on it.  How did that defense factual basis get to me?  Was it

12   by email or was it filed?

13         MS. DeLAPP:  It was sent via email to your clerk.

14         THE COURT:  I got it.  But now I can't --

15         MS. DeLAPP:  I can forward it to you.

16         THE COURT:  No, that's all right.  I've got it here.

17         All right.  Now, Mr. Patterson, before accepting your

18   pleas to each of the eight counts set out in the indictment in

19   your case, there are a number of questions that I must ask

20   you.  If at any time you don't understand one of my questions

21   or if you wish to consult with your attorneys, Ms. DeLapp and

22   Mr. Days, for any reason, please let me know because it's very

23   important that you understand each of my questions before

24   answering.  Madam clerk --

25         MR. TENNERELLI:  Your Honor, may I -- oh, I'm sorry.

8

1          THE COURT:  What?

2          MR. TENNERELLI:  I'm sorry, Your Honor, you're going

3  to ask her to swear him in.  I just didn't -- sorry.

4          THE COURT:  Madam clerk, please swear in the

5  defendant.

6    (Defendant sworn.)

7          THE COURT:  And Mr. Patterson, do you understand

8  that, having been sworn, your answers to my questions may be

9  used against you in a prosecution for perjury or making a

10  false statement if you do not answer truthfully?

11          THE DEFENDANT:  Yes, Your Honor.

12          THE COURT:  How old are you, sir?

13          THE DEFENDANT:  I'm 44 years old, Your Honor.

14          THE COURT:  What's the highest level of education

15  you've obtained?

16          THE DEFENDANT:  High school diploma, Your Honor.

17          THE COURT:  What's your most recent occupation?

18          THE DEFENDANT:  I've been in small business

19  administration, consulting business for most of my entire

20  life, Your Honor.

21          THE COURT:  Have you ever been treated for mental

22  illness?

23          THE DEFENDANT:  I have not, no.

24          THE COURT:  Have you ever been treated for addiction

25  to drugs?

1          THE DEFENDANT:  I have not, Your Honor.

2          THE COURT:  Are you presently under the influence of

3    alcohol or drugs of any kind?

4          THE DEFENDANT:  No, Your Honor.

5          THE COURT:  Do you understand what's happening here

6    today?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  Counsel, do any of you have any doubt as

9    to Mr. Patterson's competence to enter his plea at this time?

10          MS. DeLAPP:  No, Your Honor.

11          MR. DAYS:  No, Your Honor.

12          MR. TENNERELLI:  No, Your Honor.

13          THE COURT:  I find Mr. Patterson competent to enter

14    his plea.

15          Mr. Patterson, have you had enough time to discuss

16    your case, any defenses that you might have and your decision

17    to enter a plea of guilty with your attorneys?

18          THE DEFENDANT:  Yes, Your Honor.

19          THE COURT:  And are you satisfied with Ms. DeLapp and

20    Mr. Days' representation?

21          THE DEFENDANT:  Yes, Your Honor.

22          THE COURT:  Is it your understanding that your

23    attorneys and the attorneys for the government have had

24    discussions regarding -- strike that.

25          Are you entering your pleas of guilty to all eight

1  counts of the indictment here today voluntarily and because

2  you're, in fact, guilty of each of those offenses?

3            THE DEFENDANT:  Yes, Your Honor.

4            THE COURT:  The offenses to which you're offering to

5  plead guilty are felony offenses.  If your pleas are accepted,

6  you'll be found guilty of those offenses and that finding may

7  deprive you of valuable civil rights, such as the right to

8  vote, the right to serve on a jury and the right to possess

9  firearms and ammunition of any kind.  Do you understand?

10           THE DEFENDANT:  Yes, Your Honor.

11           THE COURT:  In addition, if an economic loss has been

12 suffered by any victim as a result of your criminal conduct,

13 the Court, in accordance with the Sentencing Reform Act, will

14 order you to make restitution unless the Court were to find

15 that, under the applicable statutes, restitution is not

16 appropriate in this case.  Do you understand that?

17           THE DEFENDANT:  Yes, Your Honor.

18           THE COURT:  Under the Sentencing Reform Act, the US

19 Sentencing Commission as ha issued advisory sentencing

20 guidelines for federal judges to consider in determining the

21 appropriate sentence to be imposed in all federal criminal

22 cases.  Have you and your attorneys talked about how those

23 advisory sentencing guidelines might be applied in your case?

24           THE DEFENDANT:  Yes, they have, Your Honor.

25           THE COURT:  Do you understand that the Court won't be

1  able to determine the advisory sentencing guideline range in

2  your case until after the presentence report has been prepared

3  by our probation office and after your attorney and the

4  attorney for the government have had the opportunity to object

5  to any of the findings of that report?

6  　　　　THE DEFENDANT:  Yes, Your Honor.

7  　　　　THE COURT:  Do you also understand that after it's

8  been determined what the advisory sentencing guideline range

9  is in your case, the sentencing judge may have the authority

10  to impose a sentence that's either more severe or less severe

11  than that called for by those guidelines?

12  　　　　THE DEFENDANT:  I do, Your Honor.

13  　　　　THE COURT:  Do you understand that parole has been

14  abolished in the federal criminal justice system and if you're

15  sentenced to a term of imprisonment in this case, you will not

16  be released on parole?

17  　　　　THE DEFENDANT:  Yes, Your Honor.

18  　　　　THE COURT:  You do you understand that both you and

19  the government may have the right to appeal from any sentence

20  that I impose?

21  　　　　THE DEFENDANT:  Yes, Your Honor.

22  　　　　THE COURT:  You have been charged in Count One

23  through Six, in each of those counts with wire fraud in

24  violation of 18 USC Section 1343; in Count Seven with bank

25  fraud in violation of 18 USC Section 1344; and in Count Eight

1    with attempt to evade or defeat taxes in violation of 26 USC

2    Section 71201.

3            And Mr. Tennerelli, can I ask you or Mr. Dempsey to

4    recite the essential elements of each of those offenses?

5            MR. TENNERELLI:  Yes, Your Honor.  I can do that.  So

6    for Counts One through Six, which are the wire fraud counts,

7    18 USC 1343, the elements are as follows:

8            First, the defendant knowingly participated in,

9    devised or intended to devise a scheme or plan to defraud or a

10   scheme or plan for obtaining money or property by means of

11   false or fraudulent pretenses, representations or promises.

12           Second, that the statements made as part of the

13   scheme were material.  That is, they had a natural tendency to

14   influence or were capable of influencing a person to part with

15   money or property.

16           Third, the defendant acted with intent to defraud;

17   that is, the intent to deceive and to cheat.

18           Fourth, the defendant used or caused to be used an

19   interstate wire communication to carry out or attempt to carry

20   out an essential part of the scheme.

21           Just a few things from the model instructions I'd

22   like to read, Your Honor, as well, which I included in the

23   memo.

24           THE COURT:  All right.

25           MR. TENNERELLI:  I think they're important.  In

1    determining whether a scheme to defraud exists, the jury may

2    consider not only the defendant's words and statements but

3    also the circumstances in which they're used as a whole.

4          A wiring is caused when one knows that a wire will be

5    used in the ordinary course of business or when one can

6    reasonably foresee such use.  It need not have been reasonably

7    foreseeable to the defendant that the wire communication would

8    be interstate in nature, rather it must have been reasonably

9    foreseeable to the defendant that some wire communication

10   would occur in furtherance of the scheme and an interstate

11   wire communication must have actually occurred in furtherance

12   of the scheme.

13         As to Count Seven, 18 USC 1344, bank fraud.

14         First, the defendant knowingly executed a scheme to

15   defraud a financial institution as to a material matter.

16         Second, the defendant did so with the intent to

17   defraud the financial institution.

18         And third, the financial institution was ensured by

19   the Federal Deposit Insurance Corporation.  That's 1344(1).

20   The indictment charges 1344(1) and (2).  And so I will read

21   the alternative elements, which are 1344(2).

22         First, the defendant knowingly carried out a scheme

23   or plan to carry out money or property from Bank of America by

24   making false statements or promises.

25         Second, the defendant knew that the statements or

1 | promises were false.

2 |       Third, the statements or promises were material, that

3 | is, they had a natural tendency to influence or were capable

4 | of influencing a financial institution to part with money or

5 | property.

6 |       Fourth, the defendant acted with the intent to

7 | defraud.

8 |       And fifth, Bank of America was federally insured.

9 |       As to 26 USC 7201, attempt to evade or defeat tax.

10 | The elements of that, the provision with which the defendant

11 | is charged are, first, that he acted willfully.  Second, the

12 | existence of a tax deficiency.  And three, an affirmative act

13 | constituting an evasion or attempted evasion of the tax.

14 |       Those are the elements, Your Honor.

15 |       THE COURT:  And Mr. Patterson, do you understand the

16 | nature of the charges set out in the eight counts of the

17 | indictment, the essential elements of those offenses as they

18 | have been recited and what the government would be required to

19 | prove in order to convict you of each of the counts set out in

20 | Counts One through Eight of the indictment?

21 |       THE DEFENDANT:  I do, Your Honor.

22 |       THE COURT:  Have you seen a copy of the indictment,

23 | the document setting forth in writing those charges?

24 |       THE DEFENDANT:  I have.

25 |       THE COURT:  The maximum possible punishment for those

1   offenses, Counts One through Six, are each punishable by up to

2   20 years in prison, fine of up to $250,000, a three year term

3   of supervised release.

4            Count Seven, punishable by up to 30 years in prison,

5   fine of up to one million dollars or both fine and

6   imprisonment, a five year term of supervised release.

7            Count Eight, punishable by up to five years in

8   prison, fine of up to $100,000 or both fine and imprisonment,

9   and a two year term of supervised release.

10           In addition, Counts One through Seven -- actually,

11  Counts One through Seven and Eight all carry with them a

12  possibility of a restitution order to any victim of the

13  offenses.  And each of the eight counts carries with it a

14  mandatory $100 special assessment.

15           Do you understand the maximum possible penalty?

16           THE DEFENDANT:  I do, Your Honor.

17           THE COURT:  Do you understand what supervised release

18  is?

19           THE DEFENDANT:  Yes, Your Honor.  I do.

20           THE COURT:  Are you a citizen of the United States?

21           THE DEFENDANT:  I am, Your Honor.

22           THE COURT:  Are you presently on parole or probation

23  for any other offense?

24           THE DEFENDANT:  No, Your Honor.

25           THE COURT:  Are you currently facing any other

1 criminal charges in this court or in any other court?  I'm

2 sorry?

3       THE DEFENDANT:  Not that I'm aware, Your Honor.

4       THE COURT:  If you were facing any other criminal

5 charges currently, do you understand that by entering a plea

6 of guilty to these charges, it could have some adverse impact

7 on any other criminal charges currently pending against you?

8 I'm not telling you it would have an adverse impact, I'm just

9 asking you if you understand that it could.

10       THE DEFENDANT:  Yes, Your Honor.

11       THE COURT:  Do you understand?  I talked over you.

12 Do you understand?

13       THE DEFENDANT:  Yes, I do understand, Your Honor.

14       THE COURT:  You have the right to stand by your

15 previously entered pleas of not guilty to all eight counts of

16 the indictment if you desire to do so.  Do you understand that

17 right?

18       THE DEFENDANT:  I understand, Your Honor.

19       THE COURT:  You also have a right to a jury trial on

20 those charges.  Do you understand that right?

21       THE DEFENDANT:  Yes, Your Honor.

22       THE COURT:  Do you understand at that trial you'd be

23 presumed innocent, the government would have the burden of

24 proving you guilty of the charges by competent evidence and

25 beyond a reasonable doubt?

1              THE DEFENDANT:  Yes, Your Honor.

2              THE COURT:  At that trial you'd have the right to be

3    assisted by counsel, the right to see, hear and question the

4    witnesses for the government through your attorney.  You'd

5    also have the right to object to evidence offered by the

6    government and to offer evidence on your own behalf.  Do you

7    understand each of these rights?

8              THE DEFENDANT:  Yes, I do, Your Honor.

9              THE COURT:  And do you understand that at that trial

10   you'd have the right to testify in your own defense, but that

11   if you elected not to do so, no inference of guilt could be

12   drawn from the fact that you elected not to testify at your

13   trial?

14             THE DEFENDANT:  Yes, Your Honor.

15             THE COURT:  And do you understand that by entering

16   pleas of guilty here to Counts One through Eight of the

17   indictment this morning, you'll be giving up all of those

18   rights as to those charges because there will be no trial,

19   you'll no longer be presumed innocent because you'll be

20   telling me that you're, in fact, guilty of the charges set out

21   in Counts One through Eight of the indictment?

22             THE DEFENDANT:  Yes, I do, Your Honor.

23             THE COURT:  Is that what you wish to do, plead guilty

24   to Counts One through Eight?

25             THE DEFENDANT:  Yes.

1    MS. DeLAPP:  Your Honor.  Excuse me, Your Honor.

2    Something's come to my attention.  Is there a possibility I

3    can have with Marc, co-counsel Marc Days and the defendant, a

4    brief breakout room?  Briefly?

5    THE COURT:  Sure.

6    THE CLERK:  Give me a second.

7    (Recess while the defendant and counsel confer in a

8        breakout room.)

9    MS. DeLAPP:  Okay.  We're back, Your Honor.  Thank

10   you for that.  Just for the Court's information, we believe

11   there may be a pending misdemeanor action.

12   THE COURT:  Okay.

13   MS. DeLAPP:  Okay?

14   THE COURT:  So I've advised Mr. Patterson and he's

15   acknowledged that he is aware that by pleading guilty to these

16   charges, it could have some adverse impact on any current

17   pending charge, including a misdemeanor charge.  Not that it

18   necessarily will, but that it could.

19   And you understand that, right, Mr. Patterson?

20   THE DEFENDANT:  I do, Your Honor.  And I apologize

21   for that.

22   THE COURT:  No.

23   THE DEFENDANT:  Misdemeanor violation.  I apologize.

24   It was not my intention in any way, Your Honor.

25   THE COURT:  Doesn't affect anything.  That's fine.

1      THE DEFENDANT:  Yes, Your Honor.

2      THE COURT:  So Mr. Patterson, do you understand that

3 by entering pleas of guilty to Counts One through Eight of the

4 indictment in this case, you'll be giving up all the rights

5 that I've advised you of because there will be no trial,

6 you'll no longer be presumed innocent because you'll be

7 telling me that you're, in fact, guilty of the charges set out

8 in Counts One through Eight of the indictment?

9      THE DEFENDANT:  Yes, Your Honor.

10     THE COURT:  And is that what you wish to do, plead

11 guilty to Counts One through Eight?

12     THE DEFENDANT:  I do, Your Honor.

13     THE COURT:  And defense counsel join in that waiver?

14     MS. DeLAPP:  Yes.

15     THE COURT:  And Mr. Patterson, has anyone made any

16 promises to you in order to get you to plead guilty?

17     THE DEFENDANT:  No promises, Your Honor.

18     THE COURT:  Has anyone threatened you or anyone close

19 to you in order to get you to plead guilty?

20     THE DEFENDANT:  No, Your Honor.

21     THE COURT:  What then is your plea, sir, to the

22 charge in Count One that on or about May 29th, 2015 --

23     MR. TENNERELLI:  Your Honor, could I interject for

24 one moment?

25     THE COURT:  Yeah.

1          MR. TENNERELLI:  Just as to the advisements, it's not

2     a big point, I don't think, but I just want to clarify that I

3     think Your Honor stated it specifically with Count Eight.  But

4     for Counts One through Six and Seven, in addition to imposing

5     the 30 years in prison or a fine of up to a million dollars,

6     it's also possible to impose both.  Just want to be clear

7     about that.  Both the fine and imprisonment.  Just so that the

8     maximum penalties are completely accurate, Your Honor.

9          And I also think just because this is an open plea,

10     it may be advisable just to advise the defendant that because

11     this is an open plea and multiple counts are being pled to,

12     that the Court is not under an obligation to run --

13     necessarily to run sentences concurrently on each count.  I

14     know it's not specifically in the colloquy, but just given the

15     unique circumstances, it seems like it might be worth noting.

16          THE COURT:  Well, do I have the maximum punishments

17     wrong?  I thought I did advise or both fine and imprisonment.

18     I usually do.  If I failed to do so, it was an error.  But you

19     said a million dollars and I don't think Counts One through

20     six is a million dollars.

21          MR. TENNERELLI:  You're right, Your Honor.  One

22     through six is $250,000 and Count Seven is a million.  I just

23     wanted to be clear that both the fine and imprisonment is

24     possible as the maximum sentence, Your Honor.

25          THE COURT:  So Mr. Patterson, do you understand that

1  the maximum possible punishments on Counts One through Six,

2  the wire fraud charges, is up to 20 years in prison, a fine of

3  up to $250,000 or both fine and imprisonment, a three year

4  term of supervised release.  On Count Seven, the bank fraud

5  charge, up to 30 years in prison, a fine of up to one million

6  dollars or both fine and imprisonment, a five year term of

7  supervised release.  Count Eight punishable by up to five

8  years in prison, a fine of up to $100,000 or both fine and

9  imprisonment, a two year term of supervised release.

10         You may be ordered to pay restitution to any victim

11  of any of the offenses and each count carries with it a $100

12  mandatory special assessment.

13         Do you understand those maximum possible penalties?

14         THE DEFENDANT:  I do, Your Honor.

15         THE COURT:  Do you also understand that the Court

16  is -- may, but is not required to, impose sentence on any one

17  count concurrent to the sentence imposed on any one count.

18  That is, I can impose those sentences to be served

19  consecutively?

20         THE DEFENDANT:  I do, Your Honor.

21         THE COURT:  All right.  What is your plea to the

22  charge in Count One that on or about May 29th, 2015, for

23  purposes of executing a scheme and artifice to defraud, you

24  knowingly transmitted and caused to be transmitted by means of

25  wire and radio communication in interstate and foreign

1  commerce, the wire transmission of the check by QSC in the
2  amount of $50,000 deposited into the B of A account in Fresno,
3  California and processed through Richmond, Virginia.  Guilty
4  or not guilty, sir?

5          THE DEFENDANT:  Guilty.

6          THE COURT:  And what is your plea to the charge in
7  Count Two that for purposes of executing a scheme and artifice
8  to defraud, you did knowingly transmit and cause to be
9  transmitted by means of wire and radio communication in
10 interstate and foreign commerce on or about September 30th,
11 2015, the wire transmission of a check written by QSC in the
12 amount of $65,000 deposited into the B of A account 7654 in
13 Fresno, California, processed through Kansas City, Missouri.
14 Guilty or not guilty, sir?

15         THE DEFENDANT:  Guilty, Your Honor.

16         THE COURT:  What is your plea to the charge in Count
17 Three that on or about April 5th, 2016, for purposes of
18 executing the scheme and artifice to defraud, you knowingly
19 transmitted and caused to be transmitted by means of wire and
20 electronic -- wire and radio communication in interstate and
21 foreign commerce the wire transmission check by QSC in the
22 amount of $90,000 deposited into the B of A account 1579 in
23 Fresno, California processed through Richardson, Texas.
24 Guilty or not guilty?

25         THE DEFENDANT:  Guilty, Your Honor.

1    THE COURT:  What's your plea to the charge in Count

2    Four that on or about September 22nd, 2016, for purposes of

3    executing the scheme and artifice to defraud, you knowingly

4    transmitted and caused to be transmitted by means of wire and

5    radio communication in interstate and foreign commerce the

6    wire transmission of check by QSC in the amount of $50,000

7    deposited into the B of A account 1579 in Fresno, California

8    processed through Richmond, Virginia.  Guilty or not guilty?

9    THE DEFENDANT:  Guilty, Your Honor.

10    THE COURT:  What is your plea to the charge in Count

11    Five that on or about February 2nd, 2017 for purposes of

12    executing the scheme and artifice to defraud, you knowingly

13    transmitted and caused to be transmitted by means of wire and

14    radio communication in interstate and foreign commerce the

15    wire transmission of check by NHQABLT in the amount of

16    $200,000 deposited into B of A account 1579 in Fresno,

17    California and processed through Richmond, Virginia.  Guilty

18    or not guilty?

19    THE DEFENDANT:  Guilty, Your Honor.

20    THE COURT:  And what is your plea to the charge that

21    on or about March 13, 2017 for purposes of executing the

22    scheme and artifice to defraud, you knowingly transmitted and

23    caused to be transmitted by means of wire and radio

24    communication in interstate and foreign commerce the wire

25    transmission of check by NHQABLT in the amount of $100,000

1   deposited into Bank of America account 1579 in Fresno,

2   California processed through Richmond Virginia all in

3   violation of 18 USC Section 1343, guilty or not guilty?

4           THE DEFENDANT:  Guilty, Your Honor.

5           THE COURT:  And do you acknowledge that each of those

6   transmissions of each of those checks was in violation of 18

7   USC Section 1343?

8           THE DEFENDANT:  Yes, Your Honor.

9           THE COURT:  And what is your plea to the charge in

10  Count Seven --

11          THE DEFENDANT:  Guilty, Your Honor.

12          THE COURT:  Hold on.

13          THE DEFENDANT:  Sorry.

14          THE COURT:  Yeah.

15          THE DEFENDANT:  That was Count Six.

16          THE COURT:  Well, what is your plea to the

17  charge -- listen up and see if you object.

18          What is your plea to the charge as alleged in Count

19  Seven that between on or about March 29, 2017 and on or about

20  March 31st, 2017 in Fresno County, State and Eastern District

21  of California and elsewhere, you did knowingly execute and

22  attempt to execute a scheme and artifice to defraud a

23  federally insured financial institution, specifically Bank of

24  America, and to obtain moneys and funds owned by and under the

25  custody and control of that financial institution by means of

1    materially false pretenses, representations and promises, all

2    in violation of 1344; that is, the specific banking

3    transactions on March 30th, 2017, March 30th, 2017 and between

4    March 29th and March 31st 2017, all of which as a result Bank

5    of America sustained a loss of at least $150,000 and all in

6    violation of 18 USC Section 1344.

7              What is your plea to that charge in Count Seven,

8    guilty or not guilty, sir?

9              THE DEFENDANT:  Guilty, Your Honor.

10             THE COURT:  What is your plea to the charge in Count

11   Eight -- oh, that on or about January 21st, 2003 and on or

12   about September 28, 2016, you received income from various

13   sources, including investors, employers and clients of SBA

14   PROS and SBA ELITE and that you failed to file personal income

15   returns with the IRS for 2003, 2004, 2005 and 2007.

16             THE DEFENDANT:  I'm sorry, Your Honor?

17             THE COURT:  I'm still not done.  I'm trying to figure

18   out how in the world to take this plea given the allegations

19   of the indictment.  You got me.

20             MS. DeLAPP:  Your Honor.

21             THE COURT:  Yeah.

22             MS. DeLAPP:  If I may.  I believe that if a jury were

23   to hear this, they would come back with a finding of guilt on

24   Count Eight.  I believe they would come back with a finding of

25   guilt based on the facts that we've put forth in the factual

1   basis, some of which is in that indictment, some of which are

2   not, but in all cases satisfies Count Eight.

3         THE COURT:  Mr. Tennerelli, it's your indictment.

4   What's Count Eight allege?  An attempt to evade and defeat

5   taxes when and by how?

6         MR. TENNERELLI:  Your Honor, can I have just one

7   moment?  I just need to pull up the indictment really quickly.

8   I apologize.

9         So the -- I think that the allegations of Count

10  Eight, Your Honor, for purposes of -- and I know we need to

11  deal with the factual basis.  But the allegations of Count

12  Eight are from in or about January 2014 through -- I'm not

13  going to read the whole thing.  This is just what I view as

14  being essential right now.  From in or about January 2014 to

15  in or about September 2016 in the State and Eastern District

16  of California and elsewhere, defendant Kenneth Shane

17  Patterson, a resident of Fresno, California, willfully

18  attempted to evade and defeat the payment of income tax due

19  and owing by him to the United States of America for the

20  calendar years 2003, 2004, 2005, 2007, 2008, 2009, 2010, 2013,

21  2014 and 2015 by committing and -- for purposes of this, by

22  committing at least one affirmative act of evasion.

23        THE COURT:  Mr. Patterson, what is your plea to the

24  charge in Count Eight of the indictment that from in or about

25  January 2014 through in or about September 2016 in the State

1   and Eastern District of California and elsewhere, you did, a

2   resident of Fresno, California, willfully attempt to evade and

3   defeat the payment of income taxes due and owing by you to the

4   US, United States of America, for the calendar years 2003

5   through 2010, 2013 through 2015 by committing at least one

6   affirmative act alleged in the indictment, all in violation of

7   26 USC Section 7201, guilty or not guilty?

8           MR. TENNERELLI:  Your Honor, just to clarify.  Sorry.

9   You said 2003 --

10          THE COURT:  Hey, you --

11          MR. TENNERELLI:  I'm sorry, Your Honor.

12          THE COURT:  Go ahead.

13          MR. TENNERELLI:  I apologize, the only clarification

14  was that 2006 is not included in the indictment, Your Honor.

15  So it wouldn't be 2003 through 2010.

16          MS. DeLAPP:  Nor is 2012.

17          MR. TENNERELLI:  Nor is 2012.  Correct.

18          MS. DeLAPP:  Or 2011 --

19          THE COURT:  I'll try it again.  What is your plea to

20  the charge in Count Eight, sir, that from in or about January

21  2014 through in or about September 2016 in the State and

22  Eastern District of California and elsewhere, you, a resident

23  of Fresno, California, willfully attempted to evade and defeat

24  the payment of income tax due and owing by him to the United

25  States of America for the calendar years 2003, 2004, 2005,

1   2007, 2008, 2009, 2010, 2013, 2014 and 2015 by committing

2   affirmative acts, at least one of the following affirmative

3   acts from on or about January 2015 and continuing to September

4   28, 2016, holding no personal bank accounts and conducted

5   checking activity primarily through business -- this is just

6   ridiculous.

7              MR. TENNERELLI:  Your Honor, as I indicated, I think

8   it would be sufficient just to say "by committing at least one

9   affirmative act of evasion."

10             THE COURT:  Recess.

11        (Recess.)

12             THE COURT:  We're back on the record.

13             Mr. Patterson, I'll try it one more time.  What is

14  your plea to the charge set out in Count Eight of the

15  indictment that from in or about January 2014 through in or

16  about September 2016 in the State and Eastern District of

17  California and elsewhere, you, being a resident of Fresno,

18  California, willfully attempted to evade and defeat the

19  payment of income tax due and owing by you to the United

20  States of America for the calendar years 2003, 2004, 2005,

21  2007, 2008, 2009, 2010, 2013, 2014 and 2015, by committing one

22  or more of the affirmative acts set forth at page eight of the

23  indictment -- hold on -- all in violation of 26 United States

24  Code, Section 7201.  Guilty or not guilty, sir?

25             THE DEFENDANT:  Guilty, Your Honor.

1    THE COURT:  And counsel, since this is an open plea,

2    what about the forfeiture allegation?

3    MS. DeLAPP:  Um, can we have a brief breakout room

4    conversation?

5    THE COURT:  All right.  You know, I do apologize.  I

6    have too many cases.  And really -- yeah, just, I have and

7    have had for 20 months too many cases.  I'm having to sentence

8    too many people.  My patience is shot.  I don't have any

9    anymore.  It's not healthy.  It's not good.  So I'm sorry that

10   I'm beginning to wilt under the pressure, but I am.

11   We'll just take our time, you know.  I know

12   this -- it appears to me this has been a difficult case for

13   everybody.  But I do have 747 criminal defendants pending in

14   front of me at last count.  And that's been a pretty much a

15   constant for 20 months.  And it's wearing me down.  Along with

16   the 1305 civil cases that pretty much that's run consistent

17   through the whole time.  So I'm trying.  But, yeah, sometimes

18   I don't do as well as others.  I apologize.  We will take a

19   breakout room so that the defense can talk about the

20   forfeiture allegation of the indictment.

21   THE CLERK:  Okay.

22   (Recess while defendant and defense counsel confer in

23     breakout room.)

24   MS. DeLAPP:  We're back.

25   THE COURT:  So what do we want to do on the

1   forfeiture allegation?

2           MS. DeLAPP:  We're prepared to accept the forfeiture

3   allegation.  And just so the Court is clear, we apologize to

4   the Court.  There have been numerous calls to the jail

5   facility this week and that facility has had significant

6   communication where it just drops in the middle.  So we didn't

7   fully cover that and did not want to waste the Court's time.

8   So apologize.

9           THE COURT:  I'm not mad at anybody, you know.  I just

10  like -- I'm way shorter than I usually am.  There's no doubt

11  about it.  Don't like it.  And I just wanted everybody -- I'm

12  not mad at anybody about anything.

13          Okay.  So Mr. Patterson, in the forfeiture allegation

14  of the indictment, it is alleged that upon one or more of the

15  offenses alleged in Counts One through Six of the indictment,

16  you shall forfeit to the United States, pursuant to 18 USC

17  Section 982(a)(2)(A), any property constituting or derived

18  from the proceeds obtained directly or indirectly as a result

19  of those violations, including but not limited to a sum of

20  money equal to the amount of proceeds obtained directly or

21  indirectly as a result of the wire fraud offenses for which

22  you have been convicted.

23          And that upon conviction of the offense alleged in

24  Count Seven -- that's the bank fraud charge -- that you shall

25  forward to the United States pursuant to 18 USC Section

1   981(a)(1)(C) and 28 USC Section 2461(c), any property, real or

2   personal, which constitutes or is derived from the proceeds

3   traceable to such violation, including but not limited to a

4   sum of money equal to the amount of proceeds obtained directly

5   or indirectly as a result of the bank fraud offense for which

6   you have been convicted.  And that if any property subject to

7   forfeiture, as a result of the offenses alleged in Counts One

8   through Seven of the indictment for which you are convicted,

9   cannot be located upon exercise of due diligence, has been

10   transferred or sold or deposited with a third party, has been

11   placed beyond the jurisdiction of the Court, has been

12   substantially diminished in value or has been commingled with

13   other property which cannot be divided without difficulty.

14         Do you admit or deny that forfeiture allegation?

15         I'm sorry, Mr. Patterson.  You're muted.

16         THE DEFENDANT:  I admit, Your Honor.

17         THE COURT:  All right.  And Ms. DeLapp, could you

18   recite the factual basis for these pleas of guilty.  And Mr.

19   Patterson, I would ask you to listen carefully to your

20   attorney's recitation of the factual basis for your pleas.

21         MS. DeLAPP:  Yes, Your Honor.

22         THE COURT:  Thank you.

23         MS. DeLAPP:  As to Counts One through Six, defendant

24   Kenneth Shane Patterson, within the eastern state and district

25   of California and elsewhere, knowingly devised a scheme to

obtain money from HQ by means of materially false pretenses.
Defendant obtained money from HQ by falsely telling her that
he was on the verge of acquiring a skilled nursing facility in
Pasadena, California.  These representations were material to
HQ's decision to pay defendant approximately $555,000 by wire
transmission of checks from QSC and NHQABLT.

Defendant acted with the intent to defraud because he
did not intend to and did not use the funds HQ gave him for
the purposes of acquiring the skilled nursing facility.  He
instead used the funds to pay business expenses unrelated to
the skilled nursing facility and for gambling.  The defendant
caused to be used six interstate wire communications, each
essential to the scheme.

They were as follows:

For Count One.  Date May 29, 2015, wire transmission
of QSC deposited into Bank of America account 7564 in Fresno,
California and processed through Richmond, Virginia.  Amount:
$50,000.

Count Two.  September 20th, 2015 wire transmission of
check written by QSC, deposited into Bank of America account
7654 in Fresno, California and processed through Kansas City,
Missouri.  Amount:  $65,000.

Count Three.  April 5th, 2016, wire transmission of
check by QSC deposited into Bank of America account 1579 in
Fresno, California and processed through Richardson Texas.

1   Amount: $90,000.

2        Count Four.  September 22nd, 2016, wire transmission

3   of check by QSC, deposited into Bank of America account 1579

4   in Fresno, California and processed through Richmond,

5   Virginia.  Amount:  $50,000.

6        Count Five.  February 2nd, 2017, wire transmission of

7   check by NHQABLT deposited into Bank of America account 1579

8   in Fresno.  Amount -- excuse me, in Fresno, California and

9   processed through Richmond, Virginia.  Amount:  $200,000.

10       Count Six.  March 13, 2017.  Wire transmission of

11  check by NHQABLT deposited into Bank of America account 1579

12  in Fresno, California and processed through Richmond,

13  Virginia.  Amount:  $100,000.

14       Count Seven.  Defendant, within the State and Eastern

15  District of California and elsewhere, knowingly executed a

16  scheme to defraud Bank of America, a federally insured

17  institution, and did so with the intent to defraud Bank of

18  America by knowingly writing checks from one account to

19  another, conducting online transfers, making cash withdrawals

20  and causing withdrawals to be made by others.

21       On or about March 29, 2017, defendant fraudulently

22  deposited check number 4210, written and signed by defendant,

23  from the SBA ELITE bank account into SBA PROS account 2.  At

24  the time defendant made the deposit, the SBA ELITE bank

25  account had insufficient funds to cover the check.  On or

1   about March 30th, 2017, defendant fraudulently deposited check

2   number 4209 written and signed by Patterson from the SBA ELITE

3   account into SBA PROS account 2.

4         At the time defendant made the deposit, the SBA ELITE

5   bank account had insufficient funds to cover the check.  The

6   defendant knew that when these checks were written and

7   presented, there were not sufficient funds to cover those

8   checks or account for the cash withdrawals.  As a result the

9   defendant's actions, Bank of America sustained a loss of at

10   least $150,000.

11         Count Eight.  From on or about January 1st, 2003 to

12   September 28th, 2016, defendant received income from various

13   sources.  Defendant failed to pay income tax on some of that

14   income.  Federal income taxes were due and owed by the

15   defendant to the IRS as of September 28, 2016 for tax years

16   2003 through 2005, 2007 through 2010 and 2013 through 2015.

17         The defendant had failed to file personal income tax

18   returns with the IRS for calendar years 2003, 2004, 2005 and

19   2007.  In 2009, the IRS examined the defendant's income for

20   those years and issued SFRs for those years.  The SFRs

21   reflected taxes due and owing by Patterson.  As of at least on

22   or about September 28, 2016, Patterson had not paid those

23   amounts.

24         The defendant filed personal federal income tax

25   returns with the IRS for calendar years 2008 through 2010 and

1   2014 through 2015.  These returns reflected taxes due and owed

2   by the defendant.  As of at least September 28, 2016, the

3   defendant had not paid those amounts.

4           Defendant Kenneth Shane Patterson, in the State and

5   Eastern District of California, willfully attempted to evade

6   income tax due and owing by him to the United States of

7   America for the calendar years 2003, 2004, 2005, 2007, 2008,

8   2009, 2010, 2013, 2014 and 2015 by conducting checking

9   activity through the business bank account of SBA PROS and SBA

10  ELITE to pay for personal expenses with the intent of evading

11  federal income tax owed.

12          THE COURT:  And Mr. Patterson, having heard your

13  attorney read that factual basis, is that an accurate

14  statement as to what it is you did in this case?

15          THE DEFENDANT:  Yes, Your Honor.

16          THE COURT:  I find that there's a factual basis for

17  Mr. Patterson's pleas of guilty to Counts One through Eight of

18  the indictment.  I find he understands the nature of those

19  charges and the consequences of his pleas.  I also find he

20  understands his constitutional rights and that his pleas of

21  guilty were freely and voluntarily made.  Accordingly, I

22  accept his pleas of guilty.

23          The matter will be referred to the probation office

24  for preparation of a presentence report.  Sentencing will be

25  scheduled for?

1          THE CLERK:  January 18, 2022 at 10 o'clock.

2          THE COURT:  Is that date agreeable, counsel?

3          MS. DeLAPP:  Pulling it up right now.

4          MR. TENNERELLI:  Agreeable to the government.

5          MS. DeLAPP:  That's fine, Your Honor.

6          THE COURT:  Ms. DeLapp, could I ask that you forward

7  that factual basis statement to the probation office as well?

8          MS. DeLAPP:  Already done.

9          THE COURT:  Great.  Thank you.  I don't think there's

10  any date to vacate.  Is there anything else we can do today?

11          MS. DeLAPP:  No, Your Honor.

12          MR. TENNERELLI:  Your Honor, I would just note for

13  the sentencing, as I'm sure, given the complexity of the case

14  and that this is an open plea, I will endeavor to work with

15  Mr. Days and Ms. DeLapp to make it as painless as it can be.

16  You know, to the extent we can, I'm sure we can all agree to

17  try to do what we can, you know, obviously everybody reserving

18  their rights because I know that Your Honor has a lot on its

19  plate.

20          THE COURT:  Thank you.  I appreciate it.  But, hey,

21  if there's disputes, I'll resolve them.  Just a bad ending to

22  the day.  That's all.

23          MR. TENNERELLI:  Understood.

24          THE COURT:  Like I said, not unhappy with anybody.

25  Just kind of withering under the crush.  Hopefully

1 | reinforcements arrive soon.

2 |         MR. TENNERELLI:  Thank you, Your Honor.

3 |         THE COURT:  Thank you, counsel.  Thank you, Mr.

4 | Patterson.  You can let the folks there at the facility know

5 | that we are done with your case for this morning.

6 |         THE DEFENDANT:  Yes, Your Honor.

7 |         MR. DAYS:  Thank you, Your Honor.

8 |         MS. DeLAPP:  Thank you, Your Honor.

9 |     (The proceedings were concluded at 12:00 p.m.)

10 |

11 |         I, KAREN HOOVEN, Official Reporter, do hereby certify

12 | that the foregoing transcript as true and correct.

13 |

14 | DATED:  7th of April, 2022          /s/  Karen Hooven
                                    KAREN HOOVEN, RMR-CRR
15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |